PEACOCK, Respondent, vs. WISCONSIN ZINC COMPANY, Appellant.

*May 11—June 6, 1922.*

*Nuisance: Noxious fumes from ore-roasting plant: Damage to growing crops: How determined: Evidence: Condition of other crops: Witnesses: Opinion evidence: Invading province of jury.*

1. Where growing crops are damaged by smoke, fumes, and gases from an ore-roasting plant from time to time throughout the growing season, the measure of damages is the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at such time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury.

2. Where growing crops are damaged by a single occurrence, such as a flood, the measure of damages is the difference in the value of the crops before and after the injury, ascertainable by reference to their probable value in an uninjured state at maturity, less the necessary deductions of cost of producing and marketing the part destroyed.

3. Evidence of injury to crops on other lands than those occupied by plaintiff and of damage to screens is admissible for the purpose of showing the noxious character of the gases and fumes; and testimony as to the condition and value of crops other than those belonging to plaintiff is admissible to establish the value of uninjured crops in the same general locality.

4. Testimony by a witness who had observed plaintiff's crops during the season but who was not shown to be an expert, that in his opinion the damage thereto was caused by the fumes from defendant's plant, is *held* erroneous as the opinion of a witness as to the ultimate fact.

5. A lay witness cannot give opinion evidence which covers the ultimate fact to be decided by the jury, but opinion evidence as to the ultimate fact may be given by experts in regard to matters of science, art, or skill in some particular calling.

6. Where the evidence as to whether the damage to the crops was caused by such fumes was sharply conflicting, the admission of the opinion of a non-expert witness that the damage was caused by the fumes from such plant is ground for reversal, the admission being violative of the substantial rights of the defendant within sec. 3072m, Stats.

APPEAL from a judgment of the county court of La Fayette county: J. B. SIMPSON, Judge.  *Reversed*.

This is an action brought by the plaintiff for alleged injury to his crops, pasture, milch cows and other cattle during the years 1919 and 1920, by smoke, fumes, and gases from an ore-roasting plant owned and operated by the defendant. The farm rented and occupied by the plaintiff lies to the northwest of the roasting plant, the point nearest the roaster being three eighths of a mile distant and that farthest away about a mile and a quarter distant.

The complaint alleged the ownership and interest of the plaintiffs in the premises in question, the corporate character of the defendant, the fact that the roasting plant was operated and maintained by the defendant, and

"that during the whole of said agricultural seasons for 1919 and 1920, the defendant corporation emitted and sent forth from its manufacturing plant situated in close proximity to the plaintiff's premises as aforesaid large volumes and quantities of smoke, sulphur dioxide, arsenious oxide, acid fumes, vapors, gases, and other poisonous, destructive, and deleterious substances, destructive of plant and animal life."

That such substances so sent forth were

"carried to and deposited upon the aforesaid premises of the plaintiff, and caused great injury to the grass and crops of the plaintiff growing upon the aforesaid land and further poisoned the cattle of the plaintiff grazing upon said prem-

ises and drinking from the running water upon said premises, causing some of said cattle to die, and so injuring others as to render them nearly worthless, and very seriously impairing the milking qualities of the milch cows kept upon the premises,—all to the plaintiff's damage in the sum of $3,000."

The answer admitted the corporate character of the defendant; alleged that the defendant had no information as to the interest of the plaintiff in the premises; admitted that its plant gave forth smoke, fumes, and gases, but denied that such smoke, vapors, and fumes in any manner or form affected the grass or crops of plaintiff or that they poisoned the cattle of plaintiff grazing upon said premises or drinking from the running water upon the premises.

The jury found for the plaintiff and assessed his damages as follows:

| | |
|---|---|
| Damage to crops in 1919 | $1,500 |
| Damage to crops in 1920 | $1,500 |
| Damage loss of milk in 1919 | —— |
| Damage loss of milk in 1920 | —— |
| Damage to livestock in 1919 | —— |
| Damage to livestock in 1920 | —— |

Defendant made the usual motions after verdict, which were denied, and plaintiff had judgment upon the verdict for $3,000, from which judgment the defendant appeals.

For the appellant there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *A. W. Kopp*.

For the respondent there was a brief by *Fiedler, Fiedler & Jackson* of Mineral Point, and oral argument by *Raymond T. Jackson*.

ROSENBERRY, J. This case was very thoroughly and carefully tried and has been argued here with earnestness and ability. We cannot treat in detail all of the errors assigned, but shall consider only those most important.

A number of errors are assigned relating to the introduction of testimony as to the damage to stock and by rea-

son of that damage a decreased milk supply obtained during the years 1919 and 1920. While the jury found no damage by reason of loss of milk or damage to livestock, it is urged that they must have considered damages of that character in arriving at the amount awarded as damages to crops. There is sufficient evidence to sustain the finding as to damage to crops. Therefore we find no basis in the evidence to warrant us in holding that the evidence received in respect to damages by reason of loss of milk and injury to livestock was considered by the jury in assessing the amount of damages to the crops. We shall not further consider that aspect of the case.

It is urged that the verdict is perverse. The argument in support of that claim, however, relates almost entirely to the proper measure of damages. While the evidence as to the amount of injury done to the crops by the fumes from the roaster is not entirely satisfactory, we cannot say, taking that view of the evidence which is most favorable to the plaintiff, that there is no credible evidence to support the verdict, therefore it must stand.

It is urged that while the court adopted the correct rule for the measure of damages for injury to growing crops in his instructions, throughout the trial he admitted evidence upon a different rule expressed thus:

"The measure of damages for injury to growing crops is the difference between the market value of the crops when ripe and their value in the injured condition, less the cost of maturing, caring for and harvesting that part of the crop which is not matured and harvested." *U. S. Smelting Co. v. Sisam,* 191 Fed. 293.

The defendant contends that the true rule for measure of damages for injury to growing crops is the difference in the value of the crops before and after injury in the condition they were in at the time and place of the injury. Citing 4 Sutherland, Damages (4th ed.) §§ 1023, 1049; 3 Sedgwick, Damages, § 937 and cases there cited.

We have no disposition to enter into a philosophical discussion of the reasons underlying the various rules which have been laid down for ascertaining the amount of damages done to growing crops. A growing crop as such is valuable mainly by reason of its potentialities. A field of oats, for instance, six inches high would have some value for pasturage purposes, but its real value is dependent mainly upon the fact that under normal conditions it will at maturity produce a certain yield of grain, and its present value is therefore determined very largely by reference to that fact. If an expert witness is called to testify as to the value of a field of oats six inches high before and after injury, he must necessarily take into consideration the probable yield at maturity of the crop undamaged compared with its yield in its damaged condition. Whether the witness be required to disclose the basis of his judgment or whether he be permitted to give his opinion in response to a proper question, the result is the same.

We are cited to *Folsom v. Apple River L. D. Co.* 41 Wis. 602. It was there held that the proper measure of damages was not the rental value of the premises, but the value of the crop standing upon the ground before and after injury, and in estimating the value of the crop standing on the ground the witnesses were allowed to state the amount of hay which the land would produce and apparently based their estimate of damages upon that estimate. Where the destruction was complete, the full value of the matured crop was allowed; where the destruction was partial, the diminished value was allowed.

The rule was stated in *U. S. Smelting Co. v. Sisam,* 191 Fed. 293:

"Where a crop is injured from time to time throughout its growing season until its maturity, by sulphurous fumes and their products, but is not destroyed, so that it is cultivated throughout the season, harvested, and marketed, the damage to it may be lawfully measured under these rules

Peacock v. Wisconsin Zinc Co. 177 Wis. 510.

by the difference between the value at maturity of the probable crop, if there had been no injury, and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury."

This appears to us to be the only fairly workable rule for measuring damages of the sort complained of in this case. Evidence of the amount and value of the probable crop had it not been injured afforded the only substantial basis for determining the amount of injury which was sustained. This is particularly true where the injury consists of a series of occurrences covering substantially the entire crop period.   Where the damage is done by a single occurrence, as by a flood, the difference in the value of the crops before and after injury is the measure of the recovery, but that is ascertainable by reference to its probable value in the uninjured state at maturity less the necessary deductions of cost of producing and marketing the part destroyed. *International Agric. Corp. v. Abercrombie,* 184 Ala. 244, 63 South. 549, 49 L. R. A. N. s. 415; *Smith v. Hicks,* 14 New Mex. 560, 98 Pac. 138, 19 L. R. A. N. s. 938; *American S. & R. Co. v. Riverside D. & S. Farm,* 236 Fed. 510; *Teller v. Bay & River D. Co.* 151 Cal. 209, 90 Pac. 942, 12 L. R. A. N. s. 267; *U. S. Smelting Co. v. Sisam,* 191 Fed. 293, 37 L. R. A. N. s. 976.

Error is assigned because the court permitted evidence of injury to crops on other lands than those occupied by the plaintiff.   This evidence was apparently admitted for the purpose of showing the noxious character of the gases and fumes emitted from defendant's roasting plant, and for that purpose we think it was clearly admissible.

It is urged that the court erred in admitting evidence as to the condition and value of crops other than those belonging to plaintiff.   This evidence was offered for the purpose of establishing the value of uninjured crops in the same general locality, planted and cultivated under substantially

the same conditions as were the crops of the plaintiff and upon soil of the same general character. This evidence was offered and received for the purpose of ascertaining the probable amount of the matured crop—a necessary factor in determining its value. There were no crop records covering the plaintiff's land for the years prior to 1919 and 1920. Had there been such records, it is doubtful if they would have been satisfactory by reason of the varying climatic conditions and variations in planting and cultivation. Evidence as to crops in the immediate locality which were not injured necessarily reflected the conditions which prevailed during the growing seasons of 1919 and 1920 and afforded a fair basis for the ascertainment of the probable amount of the plaintiff's crops had they been uninjured.

Evidence as to the injury to screens was admitted and received as tending to show the noxious character of the gases emitted from defendant's plant. No evidence was offered as to their value and the evidence was admissible for the purpose for which it was offered and received.

The witness J. H. Curwen was permitted to testify in considerable detail as to observations made by him personally as to the effect upon vegetation in the immediate vicinity of the plant of the fumes emitted from defendant's plant, and in response to a question was permitted to state that in his opinion the injury done to the plaintiff's crops was due to the fumes from the roaster. It is urged that this testimony invades the province of the jury, within the rule laid down by the court in *Maitland v. Gilbert P. Co.* 97 Wis. 476, 72 N. W. 1124. In that case a witness was permitted to testify as to the cause of the explosion of a glass. Whether or not a certain valve was open or closed was in dispute. Without stating either one fact or the other as a part of the question, the witness was permitted to testify as to what in his opinion constituted the cause of the accident, and it was held that, where evidentiary facts are in dispute, opinion evidence as to the ultimate facts must be given upon a hypothetical case.

The witness Curwen testified that he observed the crops on the plaintiff's farm twice in the year 1919; that he noticed during the first or second week of June that the leaves of some of the oats had turned white and a good many had fallen off; that he had never seen an oat field at that time that had the same general appearance as plaintiff's field; that he observed the plaintiff's corn crop; that the field was fairly free from grass and weeds; that he was there the first or second week in June; that the corn was "kind of on the sickly-looking order," leaves dropped off and had taken a second growth, not all the way down, just three or four inches from the end of the leaves. He was there again in July of the same year. It had grown out a good deal and some of it looked fairly good. The hay didn't have any leaves on it. The heads were wizened up, it had a whitish color, and it ripened before it matured in the first bloom.

The witness also testified that the conditions which existed three quarters of a mile or a mile away were a good deal better than those that were within half a mile of the roaster. The witness made substantially similar observations during the year 1920. The witness was asked the following question:

"Now, Mr. Curwen, you have described to the court and jury the appearance of crops within a mile from this roaster during the years 1919 and 1920, and to some extent beyond that; you have stated that you made investigations and observations of crops during those years and in the years previous to the time the roaster began to operate. What in your opinion and in your judgment was the cause of the condition of these crops as you have described them within a mile distance of this roaster during the years 1919 and 1920?"

The question was objected to generally and specifically as calling for a conclusion, which it was in the province of the jury to answer. Over the defendant's objection the witness was permitted to answer: "They were damaged by roaster fumes from the Skinner roaster," referring to the

roaster owned and operated by the defendant. The witness did not claim to have any knowledge of chemistry or to have had any technical training of any kind with reference to the effect of noxious gases upon vegetation. He had made observations adjacent to the plant of the defendant and from the result of those observations he thought that the damaged condition of the vegetation was due to the presence of fumes from the roaster. The witness may have been an expert farmer and familiar with all the various processes involved in normal agriculture, but this would in no degree or extent qualify him as an expert upon the subject of the effect of noxious fumes upon vegetation. He had made no experiments, and he could only infer that the damage was due to the fumes from the roaster from the fact that prior to the erection of the roaster he had not observed similar manifestations in that vicinity; that the fact that according to his observations the damage extended over a limited area also enabled him to infer that the damage was due to the presence of the noxious fumes. All of these inferences, however, the jury were quite as competent to draw as the witness. The witness did not assume to exclude all other possible causes, but testified that the condition of the vegetation was due to the presence of the noxious gases from the roaster operated by the defendant. This was the ultimate fact at issue in the case.

No rule is better settled than that a lay-witness cannot give expert evidence which covers the ultimate fact to be decided by the jury. That opinion evidence as to the ultimate fact may be given by experts in regard to matters of science, art, or skill in some particular calling is equally well settled. *Benson v. Superior Mfg. Co.* 147 Wis. 20, 132 N. W. 633; *Maitland v. Gilbert P. Co.* 97 Wis. 476, 72 N. W. 1124; *Baker v. Madison,* 62 Wis. 137, 22 N. W. 141, 583.

While the subject matter of the testimony given in this case was the damage to crops, with respect to which the

Peacock v. Wisconsin Zinc Co. 177 Wis. 510.

witness Curwen no doubt was qualified to testify as an expert in respect to those matters occurring in the ordinary course of agriculture, he made no pretenses that he had the qualifications which would enable him to testify as to the effect of noxious gases upon vegetation, and therefore the testimony given by him covering the ultimate fact at issue in the case was simply the statement of an inference which the jury were as competent to draw as the witness.

It is quite strongly urged that, even if the admission of this testimony be error, it is not prejudicial. The question of whether or not the damage complained of by the plaintiff was due to the presence of fumes from the roaster or was the result of natural causes was one sharply contested upon the trial and the crux of plaintiff's case. The answer of the witness could hardly have failed to affect the determination of the jury upon that question. While the jury may have drawn the same inferences from the facts introduced upon the trial as did the witnesses, nevertheless the defendant had a right to have the issues in the action determined by the jury uninfluenced by the opinion of the witness. We are of the opinion that the substantial rights of the defendant were affected by the error complained of within the meaning of sec. 3072m, Stats.

Opinion evidence is at the best oftentimes unsatisfactory; but to permit lay-witnesses who have no skill or scientific knowledge in relation to matters about which they testify to hazard opinions in respect to matters which may be scientifically established, is a practice which has received the condemnation of the courts of this country generally.

*By the Court.*—Judgment reversed.