282 So.2d 19 (1973)
MULFORD HICKERSON CORPORATION, a Florida Corporation, Appellant,
v.
ASGROW-KILGORE COMPANY, a Corporation, and Southeastern Ag Helicopters, Inc., a Corporation, Appellees.
No. 72-29.
District Court of Appeal of Florida, Fourth District.
July 27, 1973.
Rehearing Denied September 17, 1973.
*20 Charles T. Wells of Maguire, Voorhis & Wells, Orlando, for appellant.
Gobel D. Dean and Edna L. Caruso of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, West Palm Beach, for appellees Asgrow-Kilgore.
James R. Hunkapiller of Gurney, Gurney & Handley, Orlando for appellee Southeastern AG Helicopters.
WALDEN, Judge.
This is an appeal of a final judgment rendered in defendants' favor after a nonjury trial on plaintiff's complaint for damages negligently caused to plaintiff's crop. We reverse and remand with instructions.
Plaintiff-appellant, Mulford Hickerson Corp., a commercial grower of ornamental plants, raises caladiums. Part of plaintiff's lands are adjacent to canals and ditches in the Zellwood Drainage District. Defendant-appellee, Asgrow-Kilgore Co., prepared a herbicide spray containing the chemical 2,4D, which was applied from a helicopter owned by defendant-appellee, Southeastern AG Helicopter, Inc., to plants in the canals and ditches of the Zellwood Drainage District. A few days after the herbicide was applied to the canals the plaintiff's caladium fields showed damage and signs of decline from contact with the 2,4D, which had drifted over from the intended target.
Plaintiff's caladium plants produced a poor yield of caladium tubers for the year. The yield per acre, which was much lower than expected, was the smallest yield ever, even though plaintiff cultivated greater acreage than it had in the past. Plaintiff sued defendants, charging that Asgrow-Kilgore Co. was negligent in preparing the spray and that Southeastern AG Helicopter, Inc. was negligent in applying the spray. The trial court, finding in defendants' favor, determined that Asgrow-Kilgore Co. was not negligent in preparing the herbicide, but had sufficient control over Southeastern AG Helicopter, Inc. to be responsible for its negligence. It found that the herbicide came into contact with plaintiff's caladium plants as a result of the negligent application of that spray by Southeastern AG Helicopter, Inc., but that plaintiff failed to prove that the helicopter company's negligence was the proximate cause of the damage to the caladium tuber crop. The court specifically observed:
"2. The court finds, from the greater weight of the evidence, that the Herbicide spray containing 2,4D prepared by ASGROW KILGORE COMPANY and applied by Defendant SOUTHEASTERN AG HELICOPTER, INC. came into contact with some of Plaintiff's caladium plants. The court further finds, from the greater weight of the evidence, that this contact was a result of the negligent application of that spray by Defendant SOUTHEASTERN AG HELICOPTER, INC.
"3. The court finds, however, that Plaintiff failed to establish, by the greater weight of the evidence, that the negligence of Defendant SOUTHEASTERN AG HELICOPTER, INC. was the proximate cause of the alleged damage to the caladium tuber crop complained of by Plaintiff.
"Although not necessary to a final determination of this cause, the court makes the following findings:
"(a) That Plaintiff failed to establish, by the greater weight of the evidence, the nature and extent of the damage to the caladium tuber (bulb) crop by reason of the 2,4D formula coming in contact with some of the caladium plants, and
"(b) That Plaintiff also failed to establish, by the greater weight of the evidence, the amount of the money damages suffered by Plaintiff.
"The evidence as to the nature and extent of the damage to the tuber crop and the amount of the money damages suffered by Plaintiff, was, for the most part, speculative in nature."
*21 The trial court very studiously presided over this case and there was much expert testimony one way and the other and statistical projectments as to possible damages. In their appellate presentation counsel have minutely assessed the problem. However, from our after view we feel the issue and the problem is perhaps simpler than that suggested in the briefs.
The defendants' negligence and liability has been clearly demonstrated, as recognized by the trial court. This negligence manifestly and proximately produced damages to the plaintiff's tuber crop.[1] Thus, the basic underlying issue is the legal sufficiency of the proofs as to plaintiff's damages.
It is our assessment that the trial court, conscientious and careful as it was, was laboring under a misapprehension in this instance as to the law of damages. The fact of damages must be shown with reasonable certainty to warrant recovery, however there are situations where the fact of damages is certain, but the amount is uncertain. The amount of damages need only be ascertainable with a reasonable degree and not exactly calculable. Approximate results suffice. McCall v. Sherbill, Fla. 1953, 68 So.2d 362. Once the right to recover damages is established, difficulty in assessing damages is not sufficient basis for denying their recovery. Twyman v. Roell, Fla. 1936, 123 Fla. 2, 166 So. 215.
Some damages may be measured with certainty and others not, depending on their nature. To illustrate with common examples known to all, usually the complete destruction of a chattel of established market price and replacement value can be measured with exactness. At the other end of the spectrum, items such as loss of consortium and pain and suffering are necessarily uncertain and incapable of exact definition. See 9A Fla.Jur., Damages, §§ 21, 43; Seaboard v. McKelvey, Fla. 1972, 270 So.2d 705.
And now we come to the law of damages as concerns crops. In 21 Am.Jur.2d, Crops § 74, it is stated:
"The questions relating to the measure of damages for injuries to, or destruction of, a growing crop are not altogether devoid of difficulty. The courts are not agreed on the subject, partly from a difference in the rules applicable to the measure of damages and in the various holdings as to what evidence is admissible in such cases, and partly from the way in which various propositions of law as well as of fact have been stated. These differences, added to the inherent difficulty of estimating the value of a growing crop, create some misgiving in the formulation of general rules respecting the subject, but there is no doubt that compensation for the real injury is the purpose of all remedies." (Emphasis supplied.) 21 Am.Jur.2d, Crops § 74.
In this case the crop was not completely destroyed, but a lower yield was produced at the end of the season due to the defendants' negligence. Some courts in such instances where the crop is not completely destroyed assess the measure of damages as the difference between the value at maturity of the probable crop if it had remained uninjured and the value of the actual crop produced less the marketing costs for that portion of the probable crop destroyed by the injury. If the reduced yield caused no reduction in labor and expense, then no deduction need be made for such costs. 21 Am.Jur.2d, §§ 78 and 79. See also McCormick on Damages, § 126, pp. 486-490 (1935), Annot. 175 A.L.R. 159 (1948).
A case arising in Florida, Wm. G. Roe & Co. v. Armour & Co., 5th Cir.1969, 414 F.2d 862, assessed the measure of damages where annual orange production was reduced partially due to defendant's negligence as the normal yield, less the amount harvested, (less the amount lost due to a *22 freeze), calculated on the basis of the average market price for the same kind of fruit established during the season that the injury occurred.
It is our judgment from an assessment of the record that the trial court was unduly rigid in determining the degree of certainty as to proofs of damages that would be required under the circumstances of this case. We feel that there is a basis in the record whereby the formula utilized in Wm. G. Roe & Co. v. Armour & Co., supra, comparable to the method discussed in 21 Am.Jur.2d § 78, can be used in the instant case. The suggested formula is the (expected) normal yield less the amount harvested and reduced by marketing costs, if any, for that portion of the crop destroyed by the injury, calculated on the basis of the average market price for the same crop during the season that the injury occurred. Somewhat as an aside, we record that the difficulties as to pre-injury production statistics are not insurmountable for there are either written production records or oral testimony as to yield for most of the critical pre-injury years.
And now we digress for a moment to touch somewhat repetitively upon the concept of proximate cause which appears to occasionally engender a degree of confusion. The text book definition found at 23 Fla.Jur., Negligence, § 26, is:
"The proximate cause of an injury may be generally defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred... . the cause that leads to, produces or contributes directly to, the production of the injury of which complaint is made." Id. at 271.
See also Florida Standard Jury Instruction 5.1(a).
And there is an overlap with term being in general and essential use in both the law of negligence and the law of damages. See 23 Fla.Jur., Negligence, § 25 and 9A Fla.Jur., Damages, §§ 12, et seq. In its simplest context with reference to the instant suit there must be shown a causal relationship between the negligent act complained of, i.e. the negligent application of a herbicide or weed killer to defendant's growing crop, and the damage about which complaint is made, that damage being a smaller yield of bulbs of a diminished size and quality.
A fair reading and analysis of the appealed judgment and the testimony of the witnesses makes it totally clear from the standard of manifest and overwhelming weight that:
1. Defendants negligently sprayed herbicide upon plaintiff's caladium crop and same came into actual contact with a measurable portion of the crop.
2. The herbicide is decidedly harmful and has a deleterious effect upon caladium plants. It produces burnt leaves, contorted, crooked or S-like stems and a stunted growth which results in a smaller and puny tuber or bulb. Plant size is indicative of potential yield.
3. The plants and potential crop suffered substantial damage and a reduced yield was realized.
4. The judgment reference that plaintiff failed to establish that the negligence was the proximate cause of the damage, when read in pari materia, can only mean  not that there was not damage  but that the evidence as to it was uncertain and not capable of ascertainment in the opinion of the trial judge.
And so we hark back to the earlier portions of this opinion wherein we suggest that the able trier of the fact was laboring under a misapprehension as to the law of damages. His standard was, in our opinion, simply too rigid when applied to growing bulb crops. Thus, he ruled that the plaintiff failed to prove a causal relationship between the application of the herbicide *23 to the plants and the diminished yield in terms of dollars. In conclusion and other words, his mention of no proximate cause is altogether harmonious with the trial court's other findings and we deem it only reflective of his view that the damages were too uncertain and speculative according to his erroneous criteria and views.
We must say that this court has vacillated between applying the test which we now adopt to the naked record before us and determining at this stage the monetary value of the damages or remanding with respectful request and instructions to assess the damages consistent with the views we now express. We have adopted the latter procedure as a way of getting the best result because we feel that the trial judge is necessarily and inherently in the superior position to make this assessment. He can, from his first hand exposure to the witnesses evaluate the testimony and resolve the conflicts and assign the proper weight to the evidence. We do, therefore, reverse the appealed judgment and remand with instructions to assess damages in plaintiff's favor in accordance with the views herein expressed.
Reversed and remanded with instructions.
REED, J., concurs.
MAGER, J., dissents with opinion.
MAGER, Judge (dissenting):
I must respectfully dissent because in my humble opinion the majority decision has overlooked certain fundamental principles relating to appellate review and the law of damages.
In Golden Hills Turf & Country Club, Inc. v. Buchanan, Fla. 1973, 273 So.2d 375, 376, the Supreme Court of Florida stated:
"`Clearly, it is not the function of an appellate court to substitute its judgment for that of the trier of fact, be it a jury or a trial judge. Accordingly, although an appellate court might have reached a different conclusion had it been the initial arbitrator of the factual issues, if a review of the record reflects competent, substantial evidence supporting the findings of the chancellor, the judgment should be affirmed. (Citations omitted)'"
Where there is conflicting evidence it is not the function of the appellate court to interfere with a determination of a trial court based upon an interpretation of the evidence before it. Koones v. Koones, Fla.App. 1963, 149 So.2d 88; State v. Thomas, Fla.App. 1968, 212 So.2d 910; 2 Fla.Jur. Appeals Sections 342 and 346.
In the case sub judice the final judgment reflects that the testimony before the trial court was technical, conflicting and speculative.[1] Based upon its consideration of the nature of the evidence before it, the trial court determined that, although there was negligence in applying the spray which came in contact with the plaintiff's caladium plants, the plaintiff "failed to establish by the greater weight of the evidence, that the negligence of the defendant ... was the proximate cause of the alleged damage to the caladium tuber crop complained of by plaintiff".
The majority, therefore, exceeded the scope of appellate review when it endeavored to resolve conflicting evidence on the issue of causation. One cannot quarrel with the majority's observation and analysis of the law relating to certainty of damages. Clearly, where the right to damages has been established the mere difficulty in *24 the assessment of damages is not a sufficient reason for refusing them. 22 Am. Jur. Damages Section 23. The trial court, however, found that the greater weight of the evidence did not prove the cause of damage. Had the trial court found that the defendant's negligent spraying of the plaintiff's plants was the proximate cause of the damage to the caladium plants but, nevertheless, proceeded to hold for the defendant because of the plaintiff's inability to precisely fix with mathematical certainty the amount of damages, I would concur with the majority opinion.
The majority opinion appears to confuse the principles applicable to certainty of damages with the principles necessary to establish the cause of damages. In 9A Fla.Jur., supra, Sections 18, 20 and 21, this distinction is clearly pointed out:
"The rule of certainty is entirely distinct from and independent of the rules that the damages recoverable in tort actions must be the natural and proximate results of the wrong complained of, or, in actions ex contractu and for torts arising from contract, such as may reasonably be supposed to have been within the contemplation of the parties... .
* * * * * *
"The damages recovered in any case must be shown with reasonable certainty both as to their nature and in respect of the cause from which they proceed. Accordingly, there can be no recovery in those cases in which the fact of damage to plaintiff is not reasonably certain. And there can be no recovery unless it is shown with reasonable certainty that the loss resulted from the wrong complained of. . .."
* * * * * *
"There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix the amount of damages. While there may be many types of cases in which the damage is certain, but the amount of damages is uncertain, such uncertainty does not necessarily preclude recovery. The uncertainty which defeats recovery has reference to the cause of damage rather than to the amount of it. ..."[2] (Emphasis added.)
See Saporito v. Bone, Fla.App. 1967, 195 So.2d 244.
The majority's misconception of this distinction is further evidence of its reliance on Wm. G. Roe & Co. v. Armour & Co., supra. There, the Fifth Circuit was concerned primarily with a determination of the amount of damages rather than the cause of damages. As a matter of interest, the Court of Appeals in Armour had previously remanded the cause to the district court with the instruction that the trial court assess damages if it determined that the emission of fluorine gas from Armour's phosphate plant was "a proximate cause of the reduction in yield". The district court determined the issue of causation first and then proceeded to determine the amount of the loss based upon a formula which the Court of Appeals ultimately approved.
The majority's decision to reverse and remand for the purpose of assessing damages completely disregards the trial court's determination that the negligence of the defendant was not the proximate cause of the alleged damage. This issue was resolved by the trial court based upon its consideration of the conflicting evidence before it, and it has not been clearly demonstrated that this determination is erroneous. I would affirm.
NOTES
[1] In this case plaintiff would have, at the least, been entitled to nominal damages as there was an invasion of plaintiff's rights. 9A Fla.Jur., Damages §§ 7, 8.
[1] The evidence was conflicting as to whether the spray was the material and controlling factor in causing the decreased yield in plaintiff's caladium crop. There were other factors, such as the condition of the soil, lack of water, frost, method of planting, disease of tubers, all of which can affect the yield.
[2] See cases cited in the footnotes and pocket parts with reference to the aforementioned quoted statements. See also 22 Am.Jur. Damages Sections 22-25.