CUTLER CRANBERRY COMPANY, INC., Plaintiff-Appellant, v. OAKDALE ELECTRIC COOPERATIVE, and another, Defendants-Respondents.

*No. 75–339. Submitted on briefs May 4, 1977.—*
*Decided June 1, 1977.*
(Also reported in 254 N.W.2d 234.)

224

For the appellant the cause was submitted on the brief of *Potter, Wefel & Nettesheim* of Wisconsin Rapids.

For the respondents the cause was submitted on a joint brief by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and *Hart, Wightman & Thurow* of Madison.

HANLEY, J. Two issues are presented on appeal:

1. Was the evidence of the average of previous years' production inadmissible to prove the amount of cranberries lost due to frost damage caused by the power failure?

2. Did the plaintiff establish its damages to a reasonable certainty?

*Admissibility of Evidence*

At the trial, Cutler presented the testimony of Bruce Potter, president of Cutler, who gave his opinion that Cutler lost 853 barrels of cranberries on the 26.44 acres due to the power failure. This figure of 853 barrels, Potter testified, was the sum of the amounts lost of each of the four varieties of cranberries grown on the subject area. Potter determined the loss of each variety in basically the same way; he compared the 1971 production to the average production in the three most productive years of 1968 through 1972. Cutler also introduced into evidence an exhibit which contained Potter's calculations as to these losses. Potter's calculations, as reflected by his testimony and the exhibit, are as follows.

First, the Searles variety comprised 12 acres of the subject area. The average production of these 12 acres for the three most productive years from 1968 through 1972 was 1,272 barrels of cranberries, or 106 barrels per acre. In 1971, Potter testified, these 12 acres produced 745 barrels, or 62 barrels per acre, but the exhibit of the calculations shows that in 1971 these 12 acres produced 768 barrels or 64 barrels per acre. Subtracting the 1971 production from the three year average, Potter testified that he calculated the loss on these twelve acres to be 504 barrels, apparently using the 768 barrel figure for 1971.

Second, a loss calculation was made for the Howe variety of cranberries, which comprised 4.25 acres of the subject area. Of Cutler's total acreage, 23.52 acres were dedicated to the Howe variety. In the three most productive years of 1968 through 1972, these 23.52 acres produced an average of 80 barrels per acre. In 1971, Potter testified, the per acre production was 36 barrels. The difference between the average per acre production and the 1971 per acre production, was therefore, 44 barrels per acre. For the 4.25 acres of Howe

variety in the subject area, the loss, Potter testified, was 4.25 acres times 44 barrels per acre, equalling 187 barrels.

Black was the third variety of cranberries in the subject area. All of Cutler's 1.86 acres dedicated to this variety were in the subject area. For the best three of the five years, this area averaged 93 barrels per acre, but in 1971 only 28 barrels per acre were produced. The difference was, therefore, calculated to be a total of 121 barrels for the 1.86 acres of the Black variety.

The fourth and last variety damaged by frost was McFarland. Cutler raised a total of 14.93 acres of the McFarland variety, but only 8.33 acres were in the subject area. Potter testified that the per acre average production of the McFarland variety in the best three years was 86 barrels. In 1971 the average for this variety was 47 barrels per acre. This difference for the 8.33 acres in the subject area totalled 325 barrels.

The total loss for the four varieties in the subject area calculated under the above method equalled 1137 barrels.

This total loss figure was then adjusted by Potter to eliminate any loss in the subject area caused by a hail storm which occurred in the summer of 1971 after the power failure. Potter estimated the extent of the hail damage by considering a 15.7 acre portion of the cranberry marsh which was not affected by frost. The best three of five years' average production for this area was 100 barrels per acre. In 1971 this area produced about 73 barrels per acre. Potter thus estimated the loss due to hail at about 25 percent, and he decreased the calculated total loss of 1137 barrels for the subject area by 25 percent to eliminate the loss due to hail. The final calculated loss caused by the frost damage was 853 barrels.

The price Cutler would have received for these cranberries lost due to frost is not in issue upon this appeal.

It is sufficient to note Potter testified that $11.10 was paid for each barrel, plus an additional $4.35 for each barrel which was processed through the fresh fruit market. Potter estimated that of the 853 barrels lost because of the power outage, 750 could have been processed as fresh fruit. Thus, for the 853 barrels, Cutler would have received approximately $12,730.80. Potter testified that Cutler saved about $900 in labor costs because of the reduced crop, and therefore the final amount calculated as damages due to the frost damage caused by the power failure was $11,830.80.

We note some inaccuracies in the method of calculation used by Potter. In respect to both the Howe and McFarland varieties, Potter determined the per acre production figures for the best three years and for 1971 using total production figures for all of Cutler's acreage to those varieties and not just acreage in the subject area. Evidently, Potter did not possess records for those varieties which distinguished the subject area from the total area. A more obvious inaccuracy is in the adjustment for hail damage. The damage was estimated to be 25 percent. Thus, Potter reduced the total calculated loss by 25 percent to compute the loss due to frost. However, the 25 percent is actually a percentage of the crop, not the loss. The hail damaged 25 percent of the crop which existed after the frost damage. Consequently, the final yield in the subject area would be 75 percent of the crop which existed after the frost damage. Potter should, therefore, have calculated the barrels lost to hail as one-third of the final yield and not 25 percent of the total loss.

At trial the defendants objected to this testimony of Potter because it was based upon averages of production in years other than 1971. The trial court permitted the testimony, but in the memorandum decision after verdict concluded that the use of averages of other years was

not a proper method of establishing the loss, and therefore Potter's testimony regarding damages was not admissible. We do not agree.

The measure of damages for injury to or partial destruction of a growing crop is the difference between the crop's value immediately before and after the injury or partial destruction. Under this rule, the most generally accepted method for determining damages for such injury to a crop is to compute the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at maturity, less the expense of cultivation, harvesting and marketing that portion of the probable crop which was prevented from maturing. *Peacock v. Wisconsin Zinc Co.,* 177 Wis. 510, 188 N.W. 641 (1922); *Martin v. Jaekel,* 188 N.W.2d 331, 336 (Iowa 1971); *Steffen v. County of Cuming,* 195 Neb. 442, 445–46, 238 N.W.2d 890, 893 (1976); McCormick, *Damages* §126, at 489–90 (1935).

In order to use this method of ascertaining damages, it is necessary that there be proof of the probable crop if there had been no injury. The issue in this case is whether averages of crop productions in years other than the year of the injury may be used to show what the probable crop would have been had there been no injury.

We find no Wisconsin case which directly holds that evidence of crop production in other years is inadmissible under these circumstances. In *Peacock v. Wisconsin Zinc Co., supra,* the plaintiff sought damages for injury to his crops during the years 1919 and 1920 by smoke fumes and gases from the defendant's ore-roasting plant. This court ruled in *Peacock* that evidence as to uninjured crops in the immediate locality was admissible to show the probable amount of the matured crop, but also stated:

"There were no crop records covering the plaintiff's land for the years prior to 1919 and 1920. *Had there*

*been such records, it is doubtful if they would have been satisfactory by reason of the varying climatic conditions and variations in planting and cultivation.* Evidence as to crops in the immediate locality which were not injured necessarily reflected the conditions which prevailed during the growing seasons of 1919 and 1920 and afforded a fair basis for the ascertainment of the probable amount of the plaintiff's crops had they been uninjured." (emphasis added.) 177 Wis. at 516.

In reliance upon the emphasized statement of the above quotation, the trial court concluded, and the defendant-respondents argue, that evidence of crop records in other years are inadmissible.

This statement in *Peacock* is only dicta, and other cases indicate that this court does not follow a rule that such evidence is never admissible. In *Donovan v. Chicago & Northwestern Railway Co.*, 93 Wis. 373, 376, 67 N.W. 721 (1896), an action for injury to lands caused by a fire set from a locomotive, this court expressly held that evidence as to what the lands had previously produced was admissible upon the question of damages. More recently, in *Naden v. Johnson*, 61 Wis.2d 375, 387, 212 N.W.2d 585 (1973), where the plaintiff claimed the defendant breached a contract to plant and supervise plaintiff's cranberry marsh in the year 1968, the court, in referring to the amount of damages suffered by the plaintiff as a result of the breach, took into consideration that only 350 barrels of cranberries were harvested in 1968 in comparison to 2,100 barrels in 1969.

In a number of states, courts have permitted the use of production figures for years other than the year of the injury as evidence of the probable crop had no injury occurred. *Mulford Hickerson Corp. v. Asgrow-Kilgore Co.*, 282 So.2d 19, 22 (Fla. 1973) ; *Johnson v. Sleaford*, 39 Ill. App.2d 228, 237, 188 N.E.2d 230, 235 (1963) ; *Beck v. Lind*, 235 N.W.2d 239, 253 (N.D. 1975). *Gable v.*

*Pathfinder Irrigation District,* 159 Neb. 778, 789, 68 N.W.2d 500, 507 (1955).

Evidence of crop production on the injured land in years other than the year of the injury and average production figures are relevant to the capacity of the land to produce crops and thus to the expected yield in the absence of the injury.

The defendant-respondents' major contention, and the view adopted by the trial court, is that because of varying conditions from year to year, evidence of the production in other years is too speculative and conjectural to afford a fair basis for the determination of the probable crop. At trial, in order to show that the evidence of crop production in other years was speculative, the defendants elicited testimony, upon cross examination of the plaintiff's witnesses, that (1) yearly cranberry production figures for both Cutler's marshes and the industry statewide, for whatever reasons, fluctuate significantly; (2) there are numerous potential threats to cranberry crops, e.g., different types of worms, grass or weeds, lack of pollination, and severe weather; and (3) while in most of the instances where a small crop is produced a cause can be identified, on a few occasions the cause of a low crop cannot be identified.

The above items of evidence do not go to the admissibility of the evidence of crop productions of other years and their averages, but only to its weight and sufficiency, which is within the province of the trier of fact. *Beck v. Lind, supra* at 253; *Schultz v. Harless,* 271 S.W.2d 696, 698 (Tex. Cir. App. 1954). In *Naden v. Johnson, supra,* where this court permitted a comparison of the crop in the year of the injury to the crop in the subsequent year, the court took into account the differentiating factor that the evidence showed the year of the injury was a poor year in general for cranberry production while the other year was exceptionally good. In the

instant case, the plaintiff's estimation of the damages was specifically adjusted to account for the hail loss later in the 1971 growing year. The plaintiff also introduced expert testimony that the 1971 crop on the subject area was not affected by any factors other than the frost and hail damage. Some evidence of the conditions and circumstances in other years was introduced.

Thus, differences between years in weather conditions and other factors which affect crop production are simply subjects of proof to be taken into consideration by the fact finder. Moreover, there are reasons why production figures of other years and averages thereof are useful in determining the amount of probable crop had there been no injury. In the instant case, there was evidence that historically, production records are relied upon in the valuation of cranberry marshes and that federal marketing orders setting quotas for cranberry growers are based upon average production figures. The use of production records and their averages to predict the probable crop is particularly reasonable in the case of cranberries, for they are a perennial crop, for which yearly planting is unnecesary, and the crop in a particular area is produced by the same plants each year. What unpredictability there is about a probable cranberry crop makes the use of production averages all the more reasonable.

The trial court correctly held that proof of damages could have been established by comparing the 1971 yield on the frost damaged beds with the 1971 yield on beds, either of the plaintiff or others in the locality, which were not frost damaged. *See Peacock v. Wisconsin Zinc Co., supra* at 516. It is not disputed that testimony of the owner and experts is admissible to show the damage. McCormick, *Damages* §14 at 55 (1935) ; 2 Sutherland, *Damages* §446 (4th ed. 1916) ; 21 Am. Jur.2d *Crops* §88 (1965). Yet, because of the numerous factors which can

affect the size and value of a crop, the above kinds of evidence are subject to the same infirmities as the defendants claim is evidence of crop records in other years. For example, in using a comparison of the yield of the injured crop with the yield of a crop on similar land in the same locality during the same year, adjustments may have to be made to offset different methods of cultivation or the fact that the other land, although in the same locality, was affected by different weather. Therefore, recognizing the speculation inherent in this kind of determination, it may not be contended that these kinds of evidence, which are unquestioned as to admissibility, are so much more accurate or less subject to varying conditions than evidence of crop records in other years that they should be admissible but the other should not. We think all this evidence is relevant, and any differentiating factors are simply matters of weight and sufficiency of the evidence. Therefore, the trial court erred in concluding Potter's testimony was irrelevant and inadmissible.

*Sufficiency of Proof*

It is a well established rule that damages must be proven with reasonable certainty. *Caygill v. Ipsen,* 27 Wis.2d 578, 589–90, 135 N.W.2d 284 (1965). However, there is no absolute requirement of mathematical precision, and the fact that the full extent of the damages is a matter of uncertainty by reason of the nature of the tort is not a ground for refusing damages. *White v. Benkowski,* 37 Wis.2d 285, 289, 155 N.W.2d 74 (1967) ; *Essock v. Mawhinney,* 3 Wis.2d 258, 269, 88 N.W.2d 659 (1958) ; *Maitland v. Twin City Aviation Corp.,* 254 Wis. 541, 549, 37 N.W.2d 74 (1949).

In *Essock v. Mawhinney, supra* at 270, the court favorably quoted the following from 15 Am. Jur. *Damages* §23, at 414:

" '[I]t is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This view has been sustained where, from the nature of the case, the extent of injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances all that can be required is that the evidence with such certainty as the nature of the particular case may permit lay a foundation which will enable the trier of fact to make a fair and reasonable estimate. . . .' "

In its memorandum opinion, the trial court stated there was no question under the evidence that damages had been caused by the power failure. The record contains ample evidence upon which a reasonable estimate of the damage could be made. There was evidence of the actual production on the subject area in 1971. There was the opinion of the expert, Leo Sorenson, that 50 percent of the crop in the subject area was destroyed by frost damage due to the power failure and that 20 percent of what remained was destroyed by the subsequent hail storm. Sorenson also testified that the frost and hail were the only factors affecting the 1971 crop. From this evidence alone, an estimate may be made as to the probable production in the subject area had no frost damage occurred. Further, the record included production figures from other years which, considering differentiating factors, could be used for comparison. Both the plaintiff and defendants introduced calculations of the loss based upon averages of these production records. Finally, there was evidence of the price Cutler received for its cranberries in 1971 and of the expenses Cutler saved by not having to fit the damaged crop for market.

Furthermore, this court has stated that where the fact of damage is clear and certain, but the amount is a matter of uncertainty, the trial court has discretion to fix a reasonable amount. *Essock v. Mawhinney, supra* at 269; *Maitland v. Twin City Aviation Corp., supra*

at 549. Simply because the amount is uncertain, the trial court should not deny recovery altogether.

We conclude that the trial court's judgment dismissing the complaint is reversed and the case remanded with the direction that the trial court enter judgment on the jury's verdict.

*By the Court.*—Judgment reversed and cause remanded with directions.

DAY, J., took no part.