Murphy v. Chatham.

RAYMOND D. MURPHY, individually and as trustee,[1] vs. TOWN OF CHATHAM.

No. 94-P-1126.

Barnstable. January 12, 1996. - December 26, 1996.

Present: DREBEN, GREENBERG, & FLANNERY, JJ.

*Nuisance. Limitations, Statute of. Massachusetts Tort Claims Act. Agriculture. Damages, Nuisance, Loss of crops.*

In a civil action, the judge correctly concluded that a town's actions and use of its property in allowing a culvert pipe to remain blocked as a result of which the plaintiff's cranberry bog remained flooded, causing damage, constituted a private nuisance. [823-824]

An action for private nuisance was timely brought within three years of the plaintiff's having sustained damages. [824]

The provisions of the Massachusetts Tort Claims Act, specifically the notice requirements, were not applicable to a cause of action for private nuisance. [824-826]

In a civil action, the judge correctly calculated the damages to a cranberry crop by considering the prior average production per acre of the grower's other undamaged bogs, however he incorrectly included in the calculation a particular bog with growing conditions different from and less advantageous than the damaged bog in question. [826-827]

In a civil action the judge correctly declined to award damages for which no basis was established on the record. [827]

Where the judge in a civil action clearly did not rely on certain testimony, this court declined to consider whether the admission of the testimony in evidence was error. [827]

In an action for private nuisance, the judge did not err in declining to grant prospective injunctive relief where there was no evidence of continuing nuisance (flooding), and the judge's denial of a motion to permit late admission of certain records of rainfall was correct where the records would not have compelled a conclusion that prospective relief was necessary. [828]

CIVIL ACTION commenced in the Superior Court Department on July 19, 1990.

[1]Of R. D. Murphy Trust.

The case was heard by *John M. Xifaras, J.*

*Bruce P. Gilmore* for the defendant.

*Herbert F. Lach, Jr.,* for the plaintiff.

FLANNERY, J. As a result of injury to one of Murphy's cranberry bogs, the trial judge found after a jury-waived trial that the town of Chatham was liable for damages on the theory of nuisance. Raising several issues between them, both parties have appealed from the judgment.

Since 1970, Murphy has owned and operated Emery bog, a cranberry bog in the town. The production of cranberries requires the flooding of the bog in the winter to protect the crop from the winter weather. Around March of each year, the bog is drained. It had been Murphy's practice to drain Emery bog into Barclay Pond. As a result of very heavy rains in 1987, however, the water level in Barclay Pond was high and water could not be diverted there. Adding to the problem, Emery Pond, the other pond abutting Emery bog, was also high, resulting in seepage of water from Emery Pond into the bog. Murphy was consequently unable, even with the use of a pump, to lower the level of water in the bog.

At around this same time, Murphy discovered a blocked culvert pipe that appeared to link Emery Pond with the next pond down the line.[2] If this pipe were opened up, the water level in Emery Pond would go down, and the flooding of the bog would cease. Murphy showed the pipe to the town's highway surveyor, and in September of 1987 Murphy's attorney sent a letter to the town providing notice of the potential for loss of present and future cranberry crops if the pipe was not opened. The town refused to open the pipe. In March, 1988, the bog could again be drained into Barclay Pond, and there has been no flooding problem since that time. As a result of Murphy's inability to drain the bog in 1987, however, the bog was damaged, adversely affecting the cranberry production of the bog for 1987, 1988, and 1989.

The trial judge found that the town "caused and permitted

[2]Both the town and Murphy were unaware of the pipe's existence until 1987. That there was some connection between the ponds was evident from maps from 1947, 1961, and 1974: presented as exhibits, the maps showed the water elevation of Emery Pond as equal to that of the next pond at the other end of the blocked pipe. The judge concluded that the town caused the pipe to be blocked by debris or fill during construction on the road between the ponds.

the culvert pipe to be blocked" and that the town's failure to open the pipe was the cause of the flooding of Emery bog. As noted, he concluded that the town was liable to Murphy for damages on the theory of private nuisance.

The town argues on appeal that it was error to find the town liable to Murphy for damages in nuisance because the town's actions and use of its property did not constitute nuisance, and because the action was not brought within the applicable statute of limitations nor were the procedural requirements of the Massachusetts Tort Claims Act, G. L. c. 258, met.

Murphy argues in his cross appeal that (1) the judge erred in calculating the crop loss when it included the acreage of a bog which was not similar to the affected bog, (2) the judge erred in not allowing as damages the costs of abating the nuisance, (3) there were evidentiary errors in the admission of the testimony of the town's surveyor as to his opinion and as to the opinion of another surveyor, (4) the judge erred in not allowing his posttrial motions to amend findings and to permit late admission of evidence, and (5) the judge erred in not issuing an injunction ordering the town to unblock the culvert pipe.

*Nuisance.* "A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another." *Doe* v. *New Bedford Hous. Authy.*, 417 Mass. 273, 288 (1994), quoting from *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 17 (1987). See *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. 112, 115-118 (1996). See also *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. 392 (1989) (town's storm water disposal system which periodically flooded plaintiff's property constituted nuisance).

The trial judge found that a blocked pipe on town property caused the flooding of Emery bog belonging to Murphy, which in turn caused a substantial reduction of Murphy's cranberry crop in 1987, 1988, and 1989. He found that the town allowed the nuisance to exist after having knowledge of it and after having a reasonable time to correct the problem. There was no error in his finding that this constituted a nuisance. "[O]ne who continues a nuisance is liable as well as he who establishes it." *Nassr* v. *Commonwealth*, 394 Mass.

767, 775 (1985), quoting from *Fuller* v. *Andrew*, 230 Mass. 139, 146 (1918). See *Franchi* v. *Boulger*, 12 Mass. App. Ct. 376, 378 (1981).

The town argues that it cannot be liable in nuisance because Murphy failed to show that the blocked culvert caused his damages. This argument is without merit. Murphy proved that the failure to open the culvert pipe was more likely than not a substantial factor in bringing about the harm. *Welch* v. *Keene Corp.*, 31 Mass. App. Ct. 157, 162 (1991), citing Restatement (Second) of Torts § 433B(1) comment a (1965). Also without merit is the town's argument finding fault with the judge's conclusion that the town's actions were unreasonable. There was ample evidence to support the conclusion that the failure to unblock the pipe was not reasonable. Contrast *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. at 117-118.

*Statute of limitations.* Murphy discovered the existence of the culvert pipe in question in April, 1987, and notified the town surveyor. He then went to the selectmen and notified them that he would lose his berry production if they did not unblock the culvert. The judge found that, because the cranberry vines were covered with water in August, 1987, when berry-producing terminal buds are formed, there was a reduction in the 1988 crop. In addition, because the bog was flooded, Murphy had to "water pick" his crop, and this affected the 1987, 1988, and 1989 harvests. As the town's refusal to unblock the culvert continued to cause damage after July 18, 1987, and as the action was commenced on July 19, 1990, less than three years after the damage occurred, the action was timely. *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. at 19. Cf. *Carpenter* v. *Texaco, Inc.*, 419 Mass. 581, 583 n.4 (1995), and cases cited.

*Massachusetts Tort Claims Act.* The town argues that the passage of St. 1993, c. 495, § 57, which amended G. L. c. 258 to include § 10(e) through (*j*), made the matter subject to the procedural requirements of G. L. c. 258. This is incorrect. The Massachusetts Tort Claims Act removed the defense of immunity in certain tort actions against the Commonwealth, municipalities, and other governmental subdivisions. "However, such remedy was not needed in regard to private nuisance actions against municipalities. Decades before the enactment of the Act, it was well established that a municipal-

ity was not immune from liability if it created or maintained a private nuisance on its land which caused injury to the real property of another." *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. at 17 (citations omitted). See *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. at 395 n.3; *Tarzia* v. *Hingham*, 35 Mass. App. Ct. 506, 510 (1993).

Section 57 of St. 1993, c. 495, added to G. L. c. 258, § 10, "what in effect is a statutory public duty rule providing governmental immunity. . . . The amendment was no doubt adopted in response to opinions in *Jean W.* v. *Commonwealth*, 414 Mass. 496 (1993), which, taken collectively, indicated that, unless the Legislature acted to the contrary by the end of its next session, this court would abandon application of its common law public duty rule." *Carleton* v. *Framingham*, 418 Mass. 623, 627-628 (1994).

Section 10 of G. L. c. 258 states that the "provisions of sections one to eight, inclusive, shall not apply to . . . (*j*) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer. This exclusion shall not apply to: . . . (3) any claim based on negligent maintenance of public property. . . ." It is this section on which the town bases its contention that the Massachusetts Tort Claims Act is applicable to this case and that the case must be dismissed for failure to comply with the notice requirements.

We think not. Negligent maintenance of public property is a different claim from private nuisance. See *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. at 117. Since municipalities were not immune from liability for private nuisance and since private nuisance was not subject to the Massachusetts Tort Claims Act once enacted, a statute exempting certain actions but excluding others from that exemption does not make private nuisance subject to the statute. Furthermore, " '[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed.' *Pineo* v. *White*, 320 Mass. 487, 491 (1946). Nothing in the language of the [amendment to the Massachusetts Tort Claims] Act signals a clear intent on the part of the Legislature to include private nuisance claims

against municipal entities." *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. at 18.

*Damages to cranberry crop.* There are no Massachusetts cases dealing explicitly with the calculation of damages to a growing crop.[3] The parties appear to have accepted the standard in *Cutler Cranberry Co.* v. *Oakdale Elec. Coop.*, 78 Wis. 2d 222 (1977). "The measure of damages for injury to or partial destruction of a growing crop is the difference between the crop's value immediately before and after the injury or partial destruction. Under this rule, the most generally accepted method for determining damages for such injury to a crop is to compute the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at maturity, less the expense of cultivation, harvesting and marketing that portion of the probable crop which was prevented from maturing. *Peacock* v. *Wisconsin Zinc Co.*, 177 Wis. 510 (1922); *Martin* v. *Jaekel*, 188 N.W.2d 331, 336 (Iowa 1971); *Steffen* v. *County of Cuming*, 195 Neb. 442, 445-446 (1976); McCormick, Damages § 126, at 489-490 (1935)." *Cutler Cranberry Co.* v. *Oakdale Elec. Coop.*, 78 Wis. 2d at 229. See *Greenwood Ranches, Inc.* v. *Skie Constr. Co.*, 629 F.2d 518, 522 (8th Cir. 1980) (under South Dakota law damages equal value at maturity which probable crop would have had, deducting actual value of damaged crop and value of labor and expense attributable to reduced yield). The court in the *Cutler Cranberry* case ruled that the trial court correctly held that proof of damages could have been established by comparing the yield for that year on the frost damaged beds with the yield on beds of the plaintiff or of others in the locality which were not frost damaged. *Cutler Cranberry Co.* v. *Oakdale Elec. Coop.*, 78 Wis. 2d at 232.[4]

The trial judge in the instant case rejected the plaintiff's original request that the probable crop be estimated using the

---

[3]The only analogy is the amount of damages assessed for the wrongful cutting of trees under G. L. c. 242, § 7. The plaintiff may choose to measure the damages by the value of the timber wrongfully cut or by the diminution in the value of the property as a result of the cutting. *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 643 (1983).

[4]The court held that an alternate formula offered by the plaintiff based on averages of production for the damaged beds in years other than the year of the damage should also have been considered; no such evidence was introduced in the case before us.

United States Department of Agriculture (U.S.D.A.) figures for the average yield per acre in Massachusetts in 1987. He opted instead to use the average production per acre in those bogs cultivated by Murphy unaffected by any flooding. In 1987, the average number of barrels of cranberries produced per acre was 122.8 according to the U.S.D.A. figures, but Murphy's yield was sixty-three barrels per acre. In 1988, Murphy's figures were 109 barrels as opposed to the U.S.D.A. figure of 157.7. On appeal, Murphy argues that the judge should have used either the U.S.D.A. average yield per acre or the average yield per acre from land similar to Emery bog. In particular, he complains that the acreage of Carter Buckley bog (another bog operated by Murphy) should not have been considered because, as Murphy testified, that bog is without frost protection and subject to salt water spray from Cape Cod Bay, and so the yield per acre is lower than the probable yield per acre of Emery bog.

We agree with the trial judge that consideration of the yield of Murphy's bogs in 1987 and 1988 is a more accurate estimate of the probable yield of Emery bog than use of U.S.D.A. statistics. We agree with Murphy, however, that the calculations should have been based on bogs as similar as possible to Emery bog and that the inclusion of Carter Buckley bog in the formula was error.

*Costs of abatement.* Murphy asks for the costs of abatement of the flood but admits that most of the $15,000 originally asked for predates July 18, 1987. Murphy is not entitled to damages sustained more than three years prior to the commencement of his action in nuisance. *Harrison* v. *Textron, Inc.*, 367 Mass. 540, 552 (1975). See *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13. On appeal, he asks only for $1,500 for the costs of water picking instead of dry picking Emery bog and engineer's expenses of $8,800. Nowhere in the appellate record, however, is there evidence of the costs of water picking beyond the representations of counsel nor of the services performed by the engineer. The judge's refusal to award these costs must be affirmed.

*Alleged evidentiary errors.* Murphy contends that the judge erred in allowing the town's highway surveyor to testify to his opinion concerning the effect of unblocking the culvert pipe. We do not reach this question because, whether or not the admission of such evidence was error, it is clear from the record that the judge did not rely on that testimony.

*Posttrial motion to permit late admission of evidence and injunction.* Murphy moved to admit records which showed that rainfall since 1987 had been less than that prior to 1987. He wanted the records admitted for the purpose of showing that the reason that the bog had not been flooded since 1987 was the lack of rain compared to the earlier period. The judge refused to grant injunctive relief compelling the town to unblock the culvert pipe on the ground that Murphy has since been able to return to draining the bog into Barclay Pond, and there has been no flooding problem since 1988. We think that the judge's decision was not clearly erroneous and that the admission of the rainfall records would not have compelled the conclusion that the problem had not been solved.

The judgment is to be modified to reflect a recalculation of damages based on the average yield per acre for Murphy's bogs not including the Carter Buckley bog. In all other respects the judgment is affirmed.

*So ordered.*