NELSON, Respondent, v. BOULAY BROTHERS COMPANY, Appellant.

*April 29—June 1, 1965.*

For the appellant there was a brief by *McLeod, Donohue & Colwin* of Fond du Lac, and oral argument by *Joseph D. Donohue.*

For the respondent there was a brief by *Lucas & Plaisted* of New Holstein, and oral argument by *Thomas H. Lucas.*

GORDON, J. The appellant has challenged both the liability and the damage phases of this case.

*Liability.*

The jury found that the plaintiff's examination of the yeast which was delivered either did reveal or ought to have revealed the presence of the defect. It follows that there could be no liability for the breach of an implied warranty of fitness under sec. 121.15 (3), Stats., or, in the absence of timely notice, for breach of warranty under sec. 121.49.

The record clearly establishes that Mr. Nelson knew by sight, taste, and smell that the yeast in the bags was different from that which he had previously used. This not only precluded his claim under the Sales Act, argues the appellant, but also it barred his recovery under a negligence count. The appellant advances a number of theories, including intervening cause and the claim that the plaintiff's negligence exceeded that of the defendant.

The jury found that the plaintiff was 25 percent negligent; the judgment in this case was entered based on common-law negligence, with the damages being reduced by the amount of the plaintiff's comparative negligence. Even though Mr. Nelson's inspection and his failure to give seasonable notice under sec. 121.49, Stats., defeated his contract claim, it did not foreclose the action in negligence. We do not believe that the loss of one's right to relief under the Sales Act automatically precludes recovery in an action based on negligence. No specific ruling to this effect has come to our attention, but this conclusion is implicit in *Tews v. Marg* (1944), 246 Wis. 245, 249, 16 N. W. (2d) 795, and *Zingale v. Mills Novelty Co.* (1943), 244 Wis. 144, 149, 11 N. W. (2d) 644. See also *Greenman v. Yuba Power Products, Inc.* (1962), 27 Cal. Rptr. 697, 377 Pac. (2d) 897, 899.

A number of cases have been presented to this court in which a plaintiff has alleged breach of warranty and, alternatively, negligence. *E.g., Strahlendorf v. Walgreen*

*Co.* (1962), 16 Wis. (2d) 421, 114 N. W. (2d) 823; *Betehia v. Cape Cod Corp.* (1960), 10 Wis. (2d) 323, 103 N. W. (2d) 64.

The instant action arose before the effective date of the Uniform Commercial Code. We note, however, that there is broad language in the new sec. 402.607 (3) (a), Stats., which would suggest that a buyer who fails to give notice is "barred from any remedy." We are not called upon to determine whether a different conclusion would result from the new legislation.

The plaintiff claimed that he did not anticipate any danger in using the irradiated yeast, and this position is not inherently incredible. The jury, however, charged 25 percent of the negligence to Mr. Nelson for using the yeast which he knew to be different from that which he had used in the past. We see no reason for upsetting that assessment.

We conclude that there is no error in connection with the findings of the jury as to liability and as to the comparison of negligence. The judgment, insofar as it reflects such findings, must be affirmed.

### *Damages.*

If one takes the testimony which was most favorable to the plaintiff, there was a gross loss suffered by him in the sum of $41,203.60. The plaintiff has acknowledged that there are various deductions which would have to be taken from such gross loss, leaving a maximum net loss of $29,966.80. The jury fixed the damages of the plaintiff at $28,000, and we hold that the judgment based on such finding as to damages cannot stand. The reason for this conclusion is that the jury's assessment erroneously included all or almost all of the sum of $21,875 which the plaintiff claimed for damage to his future herd.

The jury accepted the plaintiff's contention that his next year's mink crop was reduced by approximately 500 kits. The plaintiff's claim as to the loss of his future herd was as follows:

| | |
|---|---:|
| 125 breeders at $100 apiece | $12,500 |
| 375 pelters at $25 apiece | 9,375 |
| Total | $21,875 |

The allowance of an award for loss of future production is based on Mr. Nelson's contention that the death of some of his breeding herd in turn caused a diminution in the next year's total crop.

There are two flaws in connection with this award for a future loss. The first is that upon this record the amount is speculative, and the second is that there may be a duplication of damages, since the market value of an animal would ordinarily include an amount attributable to its ability to reproduce.

The speculative nature of the damages in this regard is apparent from Mr. Nelson's testimony. When asked to state the amount of his loss to his breeding herd, he replied, "The fact is, it is impossible to figure." Except for the figures recited above, there is no further explanation in the record as to how the plaintiff arrived at the figures of $12,500 and $9,375.

Upon the present record, the damages for loss of future births were not established with reasonable certainty. *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 94 N. W. (2d) 697, 74 A. L. R. (2d) 1095. However, even if the speculative aspect could be removed by further evidence, we nevertheless view this as an improper item of damages. The basic measure of damages for the destruction of livestock is the animal's market value, with an appropriate reduction for any salvage value. *Bell v. Gray-Robinson Construction Co.* (1954), 265 Wis. 652, 62 N. W. (2d) 390; *Gould v.*

*Merrill Railway & Lighting Co.* (1909), 139 Wis. 433, 447,.121 N. W. 161; Anno. 79 A. L. R. (2d) 677, 687.

If a mink has increased value at a certain period of the year because of its breeding capacity, this should find expression in an appraisal of its market value. To allow recovery for both market value and also for the loss of future litters would open the door to a duplication of damages. If Mr. Nelson had to pay a high price for replacements at breeding periods, that would be but another factor in determining their market value. In the *Gould Case, supra,* the court said, at page 448:

"But where the full value at the time the horse was injured is recovered, there can be no additional recovery for loss of use of the horse."

In our opinion, Mr. Nelson was entitled to recover the market value of those mink which died because of the defendant's negligence less their salvage value. In addition, a deduction would have to be made for those mink which would have died in the normal course of operations. The market value would be demonstrated by the reasonable cost of replacing the mink with comparable animals. Mr. Nelson testified that he replaced only two of the dead mink, but the reason for such limited replacement was not fully explored. The record does not establish that these mink were unique.

A case which considered a problem comparable to that in the case at bar is *Covey v. Western Tank Lines* (1950), 36 Wash. (2d) 381, 218 Pac. (2d) 322. The Washington supreme court held there could be no recovery for unborn mink.

Since the verdict included in the answer to the damage question an item which was legally erroneous, we conclude that there must be a new trial on the question of damages. While this court in *Spleas v. Milwaukee & Suburban Trans-*

*port Corp.* (1963), 21 Wis. (2d) 635, 124 N. W. (2d) 593, has extended the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, to permit its use in cases in which the prejudicial error was confined to damages, we believe that in the instant case the wiser course is to order a retrial of the damage issue.

In conclusion, the judgment must be affirmed in all respects except as to damages, and as to damages the judgment is to be reversed for a new trial limited to that issue. Costs are to be awarded to the appellant.

*By the Court.*—Judgment affirmed in part and reversed in part. Cause remanded for further proceedings consistent with this opinion.