KOLBECK and wife, Respondents, v. RURAL MUTUAL INSURANCE COMPANY, Appellant.

*No. 516 (1974). Argued October 29, 1975.—Decided November 25, 1975.*

(Also reported in 235 N. W. 2d 466.)

For the appellant there were briefs by *Terwilliger, Wakeen, Piehler, Conway & Rouse, S. C.,* attorneys, and *W. Thomas Terwilliger* of counsel, all of Wausau, and oral argument by *Douglas Klingberg* of Wausau.

For the respondents there was a brief by *Kelley, Weber & Bolte, S. C.* of Wausau, and oral argument by *Richard Bolte.*

HANLEY, J. The following issues are raised on this appeal:

1. Did Kolbeck comply with a policy provision regarding notice to the insurer and to law enforcement agencies of an occurrence which may give rise to a claim for theft?

2. Was it error for the trial court to consider testimony on the discovery of the calf carcass?

3. Was there sufficient proof under the policy requirements to sustain judgment for the insured?

4. Was the measure of damages proper and supported by the evidence?

*Notice of theft.*

The applicable policy section covering theft of livestock included the following provision:

"Upon knowledge of loss under this peril [theft] or of an occurrence which may give rise to a claim for such loss, the named insured shall give notice as soon as

practicable to the Company or any of its authorized agents and also report all pertinent facts to the nearest law enforcement officer as a condition precedent to making a claim under this peril. . . ."

Defendant contends that Kolbeck unreasonably delayed giving notice throughout the summer when he had knowledge of occurrences which may give rise to a claim for theft.

Where an automobile liability policy required notice in the event of an "accident, occurrence, or loss," this court noted that the obligation of notice was not limited to those instances where the insured knew that there might be an injury and a claim for damages. *Resseguie v. American Mut. Liability Ins. Co.* (1971), 51 Wis. 2d 92, 98, 186 N. W. 2d 236. The "occurrence" in that case was an impact between the assured's automobile and the plaintiff pedestrian. The law in Wisconsin, established in *Vande Leest v. Basten* (1942), 241 Wis. 509, 512, 513, 6 N. W. 2d 667, remains:

"The requirement in the policy that notice be given to [the] insurer as soon as practicable must receive a reasonable construction. It is not the duty of the insured to make a report unless he has reasonable grounds to believe that he is a participant in an accident."

The fact of an occurrence rather than belief as to its coverage under the policy is the determinative element that gives rise to the duty to report. The purpose of timely notice is to afford the insurer an opportunity to investigate possible claims against it or its insured while the witnesses are available and their memories are fresh. *Buss v. Clements* (1963), 18 Wis. 2d 407, 412, 118 N. W. 2d 928; *Allen v. Ross* (1968), 38 Wis. 2d 209, 215, 156 N. W. 2d 434.

In this policy notice is required upon knowledge of "loss under this peril" or upon knowledge of "an occurrence which may give rise to a claim." The first

situation clearly refers to known thefts; the latter circumstance described intends situations where theft is not yet determined as being the cause of the loss. A duty to report here would thus arise only under the latter provision, as the insurer bases its defense on the known lessened herd counts throughout the summer. No argument is made that the company did not have timely notice after the discovery of the carcass.

How much lesser than a known theft must the occurrence be before the duty to give notice arises? The insurer interprets the duty to coincide with any absence of property. Such language, however, was not in the policy. Kolbeck acknowledged a "suspicion" that some animals were not present. The occurrence had to be one that may give rise to a claim. In defining the claimable peril, the insurer excluded two situations:

"This section does not apply as respects this peril [theft] to loss . . . (e) by mysterious disappearance; or (f) by escape."

Throughout the summer the number of visible cattle was lessened, but Kolbeck had no knowledge that either a theft or an escape had occurred, although both were possible. Lacking definite proof as to whether any cattle were gone rather than in the wooded areas, and lacking any proof as to how they were gone, both of which would require a time-consuming search which he testified he could not afford to make, the situation was best characterized as a mysterious disappearance which would not give rise to a claim. The presumption arising from mysterious disappearance was not just excluded; the occurrence of such was specifically barred as a ground for a claim.

Since indications of the more usual ways in which the herd could decrease was not evident, and since the absences increasingly could not be explained by the dispersion throughout the woods, the absences were mysterious disappearances prior to the finding of evidence of

theft. There being a condition clearly stated as not qualifying for a claim, no duty to report existed.

The trial court found that the duty to report arose and was timely satisfied in October. We agree with the trial court's finding.

*Admission of evidence.*

Error is claimed for the consideration by the trial court of testimony on the discovery of the various cattle carcasses. This evidence was claimed to be barred by the following section of the policy:

"With respect to any livestock insured under this section, this peril [theft] covers certain direct losses of livestock provided that . . . (c) any physical facts relating to entry upon or exit from the described premises, in order to constitute evidence of theft hereunder, shall be reported in writing by the named insured to the Home Office of the Company at Madison, Wisconsin within 10 days of said discovery of said theft, and any physical facts not so reported shall not be considered as evidence of theft."

It is undisputed that no written formal notice was sent by Kolbeck to the home office of the Rural Mutual Insurance Company in Madison, Wisconsin. However, it is also undisputed that Kolbeck advised the local office of Rural Insurance Company of the theft within one week from the time he discovered the carcass. He was told by them that the matter would be taken care of. Thereafter, Kolbeck talked to his agent, Mr. Traeger, and was again advised that the matter would be taken care of. A claims investigator visited Kolbeck in December, apparently because Kolbeck called again; testimony established that the first agent never reported the loss further.

Kolbeck's failure to send the notice of evidence apparently stems from his lack of awareness as to the policy provision. According to Kolbeck's testimony, his policy was in the hands of a local financial institution and had

been misplaced by them. He asked for the policy back in the first week in October. He also asked for a copy of the policy from Rural Insurance Company and did not get any response.

The law is well established in this state that an insurance company cannot induce a claimant to suspend action or omit technical formal procedures and then hold that result against the claimant. *Dishno v. Home Mut. Ins. Co.* (1950), 256 Wis. 448, 41 N. W. 2d 375.

Under the facts of this case, Kolbeck's failure to file the formal notice of evidence would not constitute a defense on behalf of the insurance company because of the provisions of sec. 203.13 (3), Stats. The only exception to the application of sec. 203.13 (3) to a factual situation as established in this case is found in the following language of the statute:

". . . unless such failure to act or delay or the doing of such act in a manner different from that prescribed in the policy shall actually have substantially misled or prejudiced the insurer, . . ."

Here the insurance company had actual knowledge of the plaintiffs' loss within a short time after the discovery of the carcass on October 2, 1972. Also, the Marathon county sheriff's department was notified immediately. We fail to see wherein the defendant insurance company was prejudiced by Kolbeck's failure to file a written notice at the home office.

*Mysterious disappearance.*

The parties agreed that proof of theft had to be shown by clear and satisfactory evidence. Also, that mysterious disappearance was no basis for a claim.

Although the insurer maintains that even if the evidence of the carcasses was validly considered there would be no proof of theft for other than three animals, the character of that evidence clearly and satisfactorily

demonstrates that the premises were entered and that thievery occurred. The possibility does exist that separate thefts, some of whole animals and some of merely the meat of slain calves, did occur. Defendant insurer equates its policy language with the higher civil burden of proof, Wisconsin Jury Instruction—Civil, 205, which middle burden of proof has been generally summarized by McCormick as:

"It has been persuasively suggested that [the standard of proof] could be more simply and intelligibly translated to the jury if they were instructed that they must be persuaded that the truth of the contention is 'highly probable.'" McCormick, *Evidence* (2d ed. 1972), p. 796, sec. 340.

It is not logical to equate this burden with a requirement that physical evidence of each animal's disappearance be adduced. The breaking and entrance of a house makes it highly probable that all items of value missing were taken by the thief. Likewise, evidence of cattle theft makes it highly probable that all cattle missing from an enclosure were stolen. A disappearance cannot be considered mysterious if a logical and highly probable explanation for the disappearance exists, which explanation excludes other possibilities. An example is the disappearance of a gemstone from a ring being worn by the insured: the possibility of theft appears impossible, while a loss through a faulty setting clearly explains the absence. In this case, *Orenstein v. United Services Automobile Asso.* (1969), 32 App. Div. 227, 301 N. Y. Supp. 2d 208, based on the evidence of the carcasses, the trier of fact could draw a reasonable inference of theft of the missing cattle. There was no testimony indicating the possibility of an escape from the enclosed farm. There was sufficient credible evidence to support the trial court's finding that plaintiffs lost 17 calves and one cow by theft.

*Question of damages.*

Two questions are involved in this issue. The insurer challenges the value of the animals lost as set by the trial court and disputes the manner in which a $100 deductible clause was applied.

The trial court set the value of each calf at $180 and the value of each cow at $350. In *Brunette v. Slezewski* (1967), 34 Wis. 2d 313, 149 N. W. 2d 578, this court established that the proper measurement of value for animals is their replacement cost, reflected in the market value at time of loss, unless they are expected to show a marked increase in the future (pelting minks, for example). The insurer refers to the cross-examination of Kolbeck's witness, who purchases beef for slaughter and who bought Kolbeck's remaining cattle. This witness testified that $150 was a reasonable average value for the calves and $300 was reasonable for the cows.

The plaintiff Kolbeck testified the remaining calves were sold in November for an average of $180 per calf. He also testified the value of the calves at the date of loss was $150.

Since the value must be determined as of the time of loss, we conclude that a proper award here would be $150 for each calf and $300 for the cow.

Concerning deductions, the policy contains the following provisions:

"9. **Theft,** meaning any act of stealing or attempt thereat. The sum of $50 shall be deducted from the amount of each loss by theft, except loss of livestock."

"3. **Loss Deductible Clause:** The loss deductible amount, if any, specified in the declarations, shall apply to all perils and all coverages afforded . . . and shall be deducted from each loss for which claim is made thereunder. Any other deductible amount applicable . . . shall be superceded by the loss deductible amount, if any, specified in the declarations."

The trial court construed the $100 deductible amount listed on the declarations page to apply to each theft, and found that the evidence supported the conclusion that six thefts occurred. Kolbeck asserts that the livestock exception controls. The insurer seeks to have the deduction apply to each animal.

The policy of insurance clearly and specifically excludes the deductibility feature in cases of loss of livestock by theft. The insurer contends the $100 deductible provision contained in the declarations controls. The basis for this claim is that paragraph 3, the "Loss Deductible Clause," supercedes any other deductible amount applicable. We disagree. The key words in the "Loss Deductible Clause" are "any other deductible amount applicable." Since there is no deductible amount applicable to loss of livestock, there is no amount to be superceded by the loss deductible amount specified in the declarations. The exception for loss of livestock from the deductible feature contained in paragraph 9 of the policy controls in this case.

In accordance with the allowances on the damage issues in this opinion, the judgment is modified from the sum of $2,810 to $2,850.

*By the Court.*—Judgment modified and, as modified, affirmed.