STRAUSS BROS. PACKING CO., INC.,
a Wisconsin corporation, Plaintiff-Appellant,

v.

The AMERICAN INSURANCE COMPANY,
a foreign corporation, Defendant-Respondent.

Court of Appeals

*No. 79–1897. Submitted on briefs August 11, 1980.—
Decided September 15, 1980.*
(Also reported in 298 N.W.2d 108.)

For the plaintiff-appellant, the cause was submitted on the briefs of *Scott B. Fleming* and *Weiss, Steuer, Berzowski & Kriger* of Milwaukee.

For the defendant-respondent, the cause was submitted on the brief of *Robert C. Burrell* and *Borgelt, Powell, Peterson & Frauen* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J. Strauss Bros. Packing Co., Inc. (Strauss) is engaged in raising calves to full-term (18 weeks) for market. Collapse of a portion of the roof on a barn in which 220 calves were being raised reduced the available space and compelled the slaughter of 125 of those calves in the fourteenth week of development be-

cause of cold, lost space, cramped conditions, and ineffective feeding conditions. The 125 slaughtered calves brought approximately 61¢ per pound, while full-term calves sold at that time at 77¢ per pound. The 95 calves when sold at the completion of the 18-week term weighed an average of 330 pounds. Strauss contends the value of the 125 calves was $31,762.50 (computed at 77¢ per pound and an average weight of 330 pounds). From that sum, Strauss concedes that the actual slaughter value received ($19,915) and an unexpended barn use fee ($1,000) and an unexpended feed cost ($6,300) totalling $27,215 should be deducted, leaving a claimed loss of $4,547.50.

The trial court granted summary judgment to the American Insurance Company (American), relying upon *Kolbeck v. Rural Mutual Insurance Co.*, 70 Wis.2d 655, 235 N.W.2d 466 (1975), adopting the contention of American that the sum received by Strauss for the slaughter value of the 125 calves at the time of loss was the "actual cash value" of the property. We reverse.

Only damages are in dispute. The insurance policy issued to Strauss by American which covered the livestock provided:

Valuation. The company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

Relying upon the unambiguous term of the policy that Strauss' recovery is limited to actual cash value at the time of the loss occurrence, American contends, and the trial court agreed, that the slaughter value paid for the 125 calves exclusively determines that measure of "loss or damage." We disagree.

Although "market value is a proper test for determining the actual cash value of farm products and livestock,"[1] an "actual cash value" policy provision does not purport to fix any evidentiary rule for determining a loss. *See, e.g., Cassel v. Newark Insurance Co.*, 274 Wis. 25, 33–34, 79 N.W.2d 101, 105–06 (1956); *Engh v. Calvert Fire Insurance Co.*, 266 Wis. 419, 425–26, 63 N.W. 2d 831, 834 (1954). Our supreme court has noted that it "has consistently followed what has been termed the 'broad evidence rule' giving considerable leeway and latitude to the trier of facts. In practice, this broad rule gives to the trial forum the right to consider in a given case all facts reasonably tending to throw light upon the subject." *Doelger & Kirsten, Inc. v. National Union Fire Ins. Co.*, 42 Wis.2d 518, 523, 167 N.W.2d 198, 200 (1969).

Certainly there is a parallel between growing crops and growing livestock. Each has a reasonable potential for increase in value. *Peacock v. Wisconsin Zinc Co.*, 177 Wis. 510, 514, 188 N.W. 641, 643 (1922).

The measure of damages for injury to or partial destruction of a growing crop is the difference between the crop's value immediately before and after the injury or partial destruction. Under this rule, the most generally accepted method for determining damages for such injury to a crop is to compute the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at maturity, less the expense of cultivation, harvesting and marketing that portion of the probable crop which was prevented from maturing. *Peacock v. Wisconsin Zinc Co.*, 177 Wis. 510, 188 N.W. 641 (1922); *Martin v. Jaekel*, 188 N.W.2d 331, 336 (Iowa 1971); *Steffen v. County of Cumming*, 195 Neb. 442, 445–46, 238 N.W.2d 890, 893 (1976); McCormick, *Damages* §126, at 489–90 (1935). *Cutler Cranberry Co. v. Oakdale Elec. Cooperative*, 78 Wis.2d 222, 229, 254 N.W.2d 234, 238 (1977).

---

[1] G. Couch, Cyclopedia of Insurance Law §54.266 (2d ed. R. Anderson 1966).

Similarly, in determining the actual cash value of growing livestock, evidence of the value of full-term calves less the cost of care and feeding to the conclusion of the term is admissible and relevant under a broad evidence rule when a covered loss occurs and requires that calves be marketed before the completion of the term. Such admissibility is consistent with the "mink cases"[2] where a comparable problem of value was presented with respect to breeding or pelting minks.

We find no conflict between a broad evidence rule and the decision in *Kolbeck, supra.* Our supreme court commented in that case with respect to damages:

> The trial court set the value of each calf at $180 and the value of each cow at $350. In *Brunette v. Slezewski* (1967), 34 Wis.2d 313, 149 N.W.2d 578, this court established that the proper measurement of value for animals is their replacement cost, reflected in the market value at time of loss, unless they are expected to show a marked increase in the future (pelting minks, for example). The insurer refers to the cross-examination of Kolbeck's witness, who purchases beef for slaughter and who bought Kolbeck's remaining cattle. This witness testified that $150 was a reasonable average value for the calves and $300 was reasonable for the cows.
>
> The plaintiff Kolbeck testified the remaining calves were sold in November for an average of $180 per calf. He also testified the value of the calves at the date of loss was $150.
>
> Since the value must be determined as of the time of loss, we conclude that a proper award here would be $150 for each calf and $300 for the cow. 70 Wis.2d at 664, 235 N.W.2d at 471.

Kolbeck offered no evidence with respect to the savings that would inure to him by reason of being relieved

[2] *Valiga v. National Food Co.,* 58 Wis.2d 232, 206 N.W.2d 377 (1973); *Brunette v. Slezewski,* 34 Wis.2d 313, 149 N.W.2d 578 (1967); *Nelson v. Boulay Bros. Co.,* 27 Wis.2d 637, 135 N.W.2d 254 (1965); *Smith v. Atco Co.,* 6 Wis.2d 371, 94 N.W.2d 697 (1959).

of raising the calves to mature cows which would have brought a higher price because of their increased weight. The importance of such testimony was addressed by our supreme court in *First Wisconsin Land Corp. v. Bechtel Corp.*, 70 Wis.2d 455, 463–64, 235 N.W.2d 288, 292 (1975):

Defendants also object to the jury's verdict on the grounds that the damages are excessive. The defendants' theory is that testimony as to the plaintiff's costs in growing the beans was irrelevant and should not have been considered by the jury, because the question for consideration was the difference in value of the crop before and after the injury. In estimating the value of the crop before the injury, it was necessary to know what the crop could be expected to bring at harvest time and what the cost of growing the crop would be. The difference between these two figures is an acceptable method of estimating the value of the crop before the injury. The trial court properly denied a new trial on this ground.

*Kolbeck* must be read as establishing that the use of the slaughter value of the cattle in preference to the mature value of growing livestock was the use of an "acceptable measuring stick" by the trial court in the absence of evidence establishing the deduction in expenses resulting from being relieved from those expenses by the loss occurrence.

In the case before us, we reverse the judgment because the trial court considered *only* the slaughter value of the calves and disregarded the other evidence of value, contrary to the broad evidence rule. Of course the weight of the various evidence addressed to the issue of damages is for the trial court to assess in determining the issue. Because the dispute is limited to the issue of damages, we remand for trial of that issue only. Sec. 802.08(2), Stats.

American has emphasized that the actual cash value of the loss is to be determined at the time of the loss. The

policy expressly so provides. Under the broad evidence rule, such a provision does not transform the relevant evidence of slaughter value into conclusive evidence of market value establishing actual cash value of the property without regard to other relevant evidence.

*By the Court.*—Judgment reversed and remanded for trial of the issue of damages.