Crystal J. GARCIA, a minor, by her guardian ad litem, Andrew C. Ladd, and Nancy L. Lopez, Plaintiffs-Appellants-Cross Respondents,

v.

REGENT INSURANCE COMPANY, Defendant-Respondent-Cross Appellant,

BADGER STATE MUTUAL CASUALTY COMPANY, Defendant-Respondent,

Rene LOPEZ, Reynaldo G. Lopez, American Family Mutual Insurance Company, the City of Waukesha, Employers Insurance of Wausau, a mutual company, and Blue Cross & Blue Shield United of Wisconsin, Defendants.

Court of Appeals

*No. 91-1100. Submitted on briefs December 2, 1991.—Decided February 19, 1992.*

(Also reported in 481 N.W.2d 660.)

287

On behalf of the appellants, the cause was submitted on the briefs of *Andrew C. Ladd,* of *Cappozzo, Ladd & Milaeger,* of Waukesha.

On behalf of the respondent, Regent Insurance Company, the cause was submitted on the briefs of *Stuart B. Eich, S.C.* by *Jacqueline E. Frakes,* of Milwaukee.

On behalf of the respondent, Badger State Mutual Casualty Company, the cause was submitted on the brief of *Thomas N. Klug,* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J.  The issue on appeal is insurance coverage under two motor vehicle liability policies, one issued by Badger State Mutual Casualty Company (Badger) and the other by Regent Insurance Company (Regent). At summary judgment, the trial court ruled that the insured driver, Rene Lopez, was not "using" a motor vehicle within the meaning of the policies when his stepdaughter, Crystal Garcia, was struck by an oncoming vehicle as she was preparing to enter the vehicle Rene was operating. The court therefore dis-

missed Crystal's complaint against Badger and Regent.[1] Crystal appeals. We reverse the trial court's summary judgment ruling. We remand for further proceedings.

Regent offers an alternative ground for affirming the trial court's dismissal of Crystal's action against it. Regent contends that Rene failed to give Regent timely notice of Crystal's claim. The trial court rejected this argument.[2] We affirm this ruling of the trial court.

## FACTS AND PROCEDURAL HISTORY

Although Crystal and the insurance companies disagree as to whether coverage exists, they do not dispute the essential and controlling facts. On July 19, 1986, Crystal was at the Buchner Park swimming pool in the city of Waukesha. Rene, with his wife (Crystal's mother) as his passenger, drove a jeep motor vehicle to the park to find Crystal and to tell her that they were going to a grocery store. Upon seeing Crystal in the park, Rene pulled over to the curb. With the motor running and Rene still behind the wheel, Rene called across the street to Crystal, advising her of their plans. Crystal called back to Rene that she would like to come along. After securing Crystal's mother's approval, Rene gestured with his hand to Crystal that it was all right for her to come with them. Crystal was injured when she ran into the street and into the path of an oncoming car.

---

[1]Crystal brought her action by her guardian ad litem. Her mother, Nancy L. Lopez, is a co-plaintiff.

[2]Regent filed a cross-appeal challenging this ruling of the trial court. However, since Regent nonetheless obtained a final order dismissing the complaint, we conclude that it was not required to file a cross-appeal because it does not seek a modification of the court's order for dismissal. Therefore, Regent may argue this issue without the necessity of a cross-appeal. Rule 809.10(2)(b), Stats.

On March 21, 1989, about two years and nine months after the accident, Crystal brought this action against Rene for personal injuries. The complaint alleged, *inter alia,* that Rene negligently signaled Crystal to cross the street and failed to warn her of the oncoming vehicle. At the time of the accident, the jeep which Rene was driving was covered by liability insurance provided by both Badger and Regent. Hence, both Badger and Regent were eventually named as defendants in the lawsuit.

Regent first moved for summary judgment on the grounds that Rene had failed to timely provide it with notice of Crystal's claim as required by Regent's automobile liability policy. The trial court ruled that Rene's notice to Regent was timely and denied the motion.

Later, both Regent and Badger moved for summary judgment, contending that the accident was not covered under their respective policies of insurance because Crystal's injuries did not arise out of Rene's use of the insured vehicle. Following a hearing, the court granted the insurers' motions.[3] Crystal appeals.

## THE COVERAGE LANGUAGE

Badger's policy covers "damages for which any insured person is legally liable because of bodily injury and property damage *arising out of the ownership, maintenance or use of a car."* (Emphasis added.) Regent's policy defines a covered person as the insured or "any family member *for the ownership, maintenance*

---

[3]The trial court dismissed the action against Regent by a final order dated March 22, 1991 and the action against Badger by a final judgment dated April 16, 1991.

*or use of any auto.*"[4] (Emphasis added.) On appeal, Crystal maintains, as she did below, that coverage exists because the accident arose out of Rene's use of the jeep.[5] For their part, the insurers contend that the accident did not arise out of Rene's "use" of his jeep, as that term is meant within their respective policies of insurance.

## STANDARDS OF REVIEW

Although Crystal and the insurers sharply differ as to whether the facts warrant insurance coverage, they do not dispute, for purposes of summary judgment, the factual record which we have already recited. Thus, we are presented with a situation where we apply the terms of an insurance policy to established facts. This is a question of law. *Blackhawk Prod. Credit Ass'n v. Chicago Title Ins. Co.,* 144 Wis. 2d 68, 77, 423 N.W.2d 521, 524 (1988). This court decides questions of law independently, without deference to the trial court's decision. *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369, 374 (1987).

Additionally, we note that this issue was decided upon motions for summary judgment. Motions for summary judgment are governed by the standards articulated in sec. 802.08(2), Stats. *Maynard v. Port Publications, Inc.,* 98 Wis. 2d 555, 558, 297 N.W.2d 500, 502-03

[4]Nancy Lopez is the named insured on the Regent policy. Rene is an insured since he is a member of Nancy's family.

[5]Crystal also challenges the sufficiency of the trial court's reasoning in ruling for the insurers. However, we need not address this issue for two reasons: (1) our review is *de novo, Schapiro v. Security Sav. & Loan Ass'n,* 149 Wis. 2d 176, 181, 441 N.W.2d 241, 244 (Ct. App. 1989); and (2) we reverse the court's ruling on other grounds.

(1980). This court applies the methodology set forth in sec. 802.08(2) in the same manner as the trial court and our review is *de novo. Schapiro v. Security Sav. & Loan Ass'n,* 149 Wis. 2d 176, 181, 441 N.W.2d 241, 244 (Ct. App. 1989). That methodology has been repeated often, *see In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983), and we do not, therefore, recite it here. Summary judgment should be granted where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Schapiro,* 149 Wis. 2d at 181, 441 N.W.2d at 244.

## DISCUSSION

### The Law Generally

There is a sizable body of case law in Wisconsin concerning "arising out of the . . . use" language in an automobile liability policy. We begin, therefore, by stating some fundamental precepts which govern our interpretation of the use-of-vehicle language in the insurance policies.

Since we deal here with coverage clauses in an insurance policy, we are to broadly interpret the words as used in the policies so as to afford the greatest protection to the insured. *Lawver v. Boling,* 71 Wis. 2d 408, 420–21, 238 N.W.2d 514, 521 (1976). The coverage phrases at issue in this case—"arising out of" and "use"—are words which are very broad, general and comprehensive. *Id.* at 415, 238 N.W.2d at 518. These words are commonly understood to mean "originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided." *Id.* However, this causal relationship is not of the type

294

which would ordinarily be necessary to warrant a finding of "proximate cause" or "substantial factor" as those terms are used in imposing liability for negligent conduct. *Id.* Rather, the focus of this "causation" inquiry is on the risk for which coverage has been afforded. *Id.* at 415-16, 238 N.W.2d at 518.

Stated differently, our inquiry is whether the vehicle's connection with the activities which gave rise to the injuries is sufficient to bring those general activities, and the negligence connected therewith, within the risk for which the parties to the contract reasonably contemplated there would be coverage. *Id.* at 416, 238 N.W.2d at 518. This question is usually resolved by determining whether the alleged "use" is one which is reasonably consistent with the inherent nature or "use" of the vehicle. *See id.; see also Thompson v. State Farm Mut. Auto. Ins. Co.,* 161 Wis. 2d 450, 458, 468 N.W.2d 432, 435 (1991).

## The Law Applied to This Case

Applying the above test, we ask in this case whether the use of Rene's vehicle was sufficiently connected with Crystal's accident such that the risk was one for which the parties reasonably contemplated coverage when they contracted. *Lawver,* 71 Wis. 2d at 416, 238 N.W.2d at 518.[6] More particularly, the question is whether Rene's

[6]Crystal argues that coverage exists because she was "vehicle oriented" at the time of the accident pursuant to *Kreuser v. Heritage Mutual Insurance Co.,* 158 Wis. 2d 166, 172-73, 461 N.W.2d 806, 808 (Ct. App. 1990). This argument and analysis are premised upon the "occupancy" provisions of an insurance policy. *Id.* at 172-74, 461 N.W.2d at 808-09. In the trial court, Crystal did not address or argue from any "occupancy" provisions of the policies, although she did collaterally refer to "vehicle orienta-

verbal cues and hand gesture to Crystal constituted "use" of the vehicle within the meaning of the insurance policies. We hold that they did.

■

As we have stated, the term "use" is to be broadly construed. *See id.* at 420–21, 238 N.W.2d at 521. It is well settled that the insured does not have to "use" the vehicle in the sense of moving it forward, backing it up, putting it in gear, etc., for coverage under the "use" language of an automobile insurance policy. *Thompson,* 161 Wis. 2d at 458, 468 N.W.2d at 435. Neither does the insured have to be in direct physical contact with the vehicle to be using it. *See, e.g., Tasker v. Larson,* 149 Wis. 2d 756, 761, 439 N.W.2d 159, 161 (Ct. App. 1989).

Rather, in each instance we ask whether the injury "grew out of," "had its origin in," or "flowed from" the use of the vehicle. *Id.* (quoting *Shinabarger v. Citizens Mut. Ins. Co.,* 282 N.W.2d 301, 305 (Mich. Ct. App. 1979)). Thus, "use" takes in activities incidental to the actual operation of the vehicle. *See Thompson,* 161 Wis. 2d at 458, 468 N.W.2d at 435. These authorities and others, however, do not suggest that the term "use" must be read so expansively as to include a boundless number of activities. Even incidental uses must be related to the "inherent nature of the vehicle." *See id.*

We conclude that *Allstate Insurance Co. v. Truck Insurance Exchange,* 63 Wis. 2d 148, 216 N.W.2d 205 (1974), is particularly informative on this issue. There, the driver of a truck and his passenger were driving about looking for prey while hunting. After sighting an elk, the driver stopped the truck, and the two men prepared to leave the vehicle. While the passenger was

tion." Instead, all parties and the court focused on the "use" provisions of the policies. We deem the "vehicle orientation" argument waived.

removing his rifle from the truck, the weapon accidentally discharged, killing the driver. The issue was whether the "use" provisions of an insurance policy covered the passenger's actions of removing his weapon from the vehicle.[7]

The supreme court held that the driver's death arose out of the use of the truck. The court reasoned that:

> The use of the van for this hunting trip was reasonable and could be expected. Apparently the van is adapted for just such a purpose. If it can reasonably be expected that this van would be used to go on such a hunting outing, the necessary incidentals for such a hunting trip will be transported in the van, *i.e.,* rifles, ammunition, equipment and supplies. Such is a reasonable "use" of this vehicle, and loading and unloading of such materials and equipment, which is a normal incident to such use, constitutes the "use" of the vehicle . . ..

*Id.* at 158, 216 N.W.2d at 210.

Thus, *Allstate* teaches that the inherent nature or use of a vehicle is measured by whether the activity is reasonably expected as a normal incident to the vehicle's use. (*See also Thompson,* 161 Wis. 2d at 458, 468 N.W.2d at 435.)

The jeep in this action is designed to, among other things, carry passengers. Within the reasonable ambit of

---

[7]The litigants in *Allstate Insurance Co. v. Truck Insurance Exchange,* 63 Wis. 2d 148, 216 N.W.2d 205 (1974), were two insurance companies. Allstate, which insured the passenger under a homeowner's policy, had settled the wrongful death claim with the deceased's estate. Allstate then sought indemnification from Truck which insured the vehicle. Thus, the issue narrowed to whether the accident was embraced within the "use" provisions of Truck's policy—the same issue as in the instant case.

such use are the necessary incidental activities of boarding and alighting and the reasonable expectation that, in certain instances, the operator may be collaterally involved in such activity. Thus, we conclude that Rene's call and gesture to Crystal constituted "use" of the vehicle within the meaning of the policy and the reasonable contemplation of the contracting parties. *See Lawver,* 71 Wis. 2d at 416, 238 N.W.2d at 518. Rene's actions are thus analogous to the passenger's action of unloading his rifle from the van in *Allstate.*[8]

The insurance companies contend that this case is governed by *Saunders v. National Dairy Products Corp.,* 39 Wis. 2d 575, 159 N.W.2d 603 (1968), and *Snouffer v. Williams,* 106 Wis. 2d 225, 316 N.W.2d 141 (Ct. App. 1982), two decisions in which the plaintiff's injuries were deemed not to have arisen from the insured's use of the vehicle. These cases hold that coverage is not afforded when the vehicle merely serves as transportation to the scene of the accident and forces independent of the use of the vehicle subsequently cause the accident. *See Saunders,* 39 Wis. 2d at 582–83, 159 N.W.2d at 607, and *Snouffer,* 106 Wis. 2d at 228–29, 316 N.W.2d at 142–43.

In *Saunders,* a truck driver fell on an icy loading dock after he stepped out of the truck to determine whether the truck's trailer was in the proper position for unloading cargo. In *Snouffer,* a passenger was shot by an

---

[8]To the same effect (although not as thoroughly reasoned) is *Tasker v. Larson,* 149 Wis. 2d 756, 439 N.W.2d 159 (Ct. App. 1989). There, the insured father temporarily left his young child in his truck while he tended to a nearby minnow trap. While the father was absent, the youngster left the vehicle, stepped onto the highway and was struck by an oncoming vehicle. The court of appeals concluded that the accident was "within the reasonable contemplation of the parties to the contract." *Id.* at 761, 439 N.W.2d at 161.

irate homeowner after other occupants of the vehicle had toppled the resident's mailbox. In *Saunders,* the supreme court concluded that the truck driver merely used the truck to arrive at the loading dock, where the ice—an independent force—became the "proximate" cause of his slip and fall. *Saunders,* 39 Wis. 2d at 582–83, 159 N.W.2d at 607.[9] In *Snouffer,* the court of appeals held that the passenger's injuries did not arise out of the use of the truck, but rather because of the act of vandalism. *Snouffer,* 106 Wis. 2d at 229, 316 N.W.2d at 143.

Although *Saunders* and *Snouffer* do not use the phrase "inherent nature of the vehicle," we conclude that the cases nonetheless represent an application of this test. In both cases, the appellate courts essentially concluded that the activity causing the injuries was not a normal incident to the use of the vehicle within the

---

[9]We observe that to the extent that *Saunders v. National Dairy Products Corp.,* 39 Wis. 2d 575, 159 N.W.2d 603 (1968), expresses the necessary connection between the plaintiff's injuries and the defendant's use of the vehicle in the language of proximate cause, it has been functionally overruled by *Lawver v. Boling,* 71 Wis. 2d 408, 238 N.W.2d 514 (1976). In *Lawver,* our supreme court expressly refused to follow the proximate cause approach it had previously employed in *Saunders,* albeit outside of any direct reference to *Saunders:*

> The causal connection required to be established between the use of the automobile and the injuries is not of the type which would ordinarily be necessary to warrant a finding of "proximate cause" or "substantial factor" as those terms are used in imposing liability for negligent conduct.

*Lawver,* 71 Wis. 2d at 415, 238 N.W.2d at 518.

We add only that the *Lawver* approach has been reiterated by the supreme court as recently as 1991. *See Thompson v. State Farm Mut. Auto. Ins. Co.,* 161 Wis. 2d 450, 456–57, 468 N.W.2d 432, 434–35 (1991) (quoting *Lawver,* 71 Wis. 2d at 415–16, 238 N.W.2d at 518).

meaning of the policies and the reasonable contemplation of the parties when they contracted. *See id.; see also Saunders,* 39 Wis. 2d at 582, 159 N.W.2d at 607. Instead, other forces, *unrelated to the inherent use of a vehicle,* caused the injuries.

██

We reject the insurers' argument under *Saunders* and *Snouffer* that Rene merely used his jeep to arrive at the scene and that forces independent of the jeep's use caused the accident. This argument suggests that Rene sat in his jeep across the street from Crystal and did nothing more, save to think to himself that he would take her along to the grocery store. Were this true, *Saunders* and *Snouffer* might well control. However, Rene did more: while tending the vehicle with engine running, he called and gestured to Crystal to get into the car—action which is reasonable, expected and incidental to an operator's use of a vehicle. These pivotal facts distinguish this case from *Saunders* and *Snouffer.* Unlike the ice in *Saunders* and the vandalism in *Snouffer,* a driver's gesture and call to invite and assist a passenger to enter a vehicle is *part of* the inherent use of a vehicle.[10]

---

[10]Badger raises two related arguments which we reject. Badger contends that there is no connection between Crystal's injuries and Rene's use of his jeep because "[a]ll of the parties testified and agreed that the events were entirely unrelated to the use of the vehicle" and because "[all of the parties] testified and agreed that exactly the same circumstances would have been presented had the failure to warn and the gesture been made by Rene Lopez while seated on a bicycle, standing on the curb or seated on the curb." Even assuming, *arguendo,* that this is an accurate representation of the testimony of record, we note that the belief of the parties as to coverage does not control. Coverage is a question of law for the court based upon the language of the policy. *See Blackhawk Prod. Credit Ass'n v. Chicago Title Ins. Co.,* 144 Wis. 2d 68, 77, 423 N.W.2d 521, 524 (1988), and *Lambert*

We conclude that Rene was "using" the vehicle within the meaning of the policies at the time of Crystal's accident.

## NOTICE OF CLAIM

Because we conclude that coverage exists, we address an issue raised by Regent, and pertinent only to it. Regent claims the trial court erred in denying its motion for summary judgment based on the untimeliness of Rene's notice to it of Crystal's claim against him. Regent contends that Rene's duty to report arose with the accident.

Regent's policy provides, in relevant part, that Regent:

> must be notified as soon as reasonably possible of how, when and where the accident or loss happened. . . . Failure to notify us within a reasonable time will not invalidate or reduce a claim unless our position has been prejudiced.

The accident occurred on July 19, 1986. Crystal filed her initial complaint on March 21, 1989 and an amended complaint on April 18, 1989. Both pleadings named Rene, among others, as a defendant. However, neither

v. *Wrensch*, 135 Wis. 2d 105, 115, 399 N.W.2d 369, 373–74 (1987).

Badger also argues that the jeep bore no connection to Crystal's injuries because "[Crystal's] expert witness testified that there was no causal relationship whatsoever between the fact that Rene Lopez was seated in his jeep when he failed to warn or made a gesture and the events which transpired resulting in Crystal's injuries." Here again we observe that the question of coverage is not governed by an expert's opinion but rather by the rules of insurance contract construction. *See id.*

complaint named Regent as a defendant.[11]

Finally, on October 2, 1989, Crystal served a second amended complaint naming Regent as a defendant.

On January 31, 1990, Regent moved for summary judgment on the grounds that Rene had failed to provide it with timely notice of the claim against him. The trial court ruled that Rene's duty to give notice to Regent arose on the day he was personally served, March 28, 1989, and that his notice to Regent was thus timely, pursuant to sec. 631.81(1), Stats., and the terms of the policy. The statute states:

> Provided notice or proof of loss is furnished as soon as reasonably possible *and within one year after the time it was required by the policy,* failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

*Id.* (emphasis added).

■

We first discuss the interplay between Regent's insurance policy and the statute. The policy requires notice to Regent "as soon as reasonably possible." The

---

[11]On May 9, 1989, a claims manager for Regent's parent company, General Casualty Company of Wisconsin, was notified by a claims manager for Badger that a lawsuit had been filed naming Rene Lopez as a defendant. The record further indicates that a claims file was set up at General Casualty and Regent for the matter on May 15, 1989.

Crystal does not directly contend that such notice to Regent through General Casualty satisfies the notice requirement. Instead, she offers this argument only in the context of prejudice considerations. Regent's argument assumes that notice must be provided directly by the insured and not some other person or entity. Crystal does not address this question. Neither do we.

statute contains the same requirement but adds a grace period of "within one year after the time it was required by the policy." Section 631.81(1), Stats. The statute thus represents an additional provision of the insurance contract which is incorporated into the contract by operation of law. *See Poling v. Wisconsin Physicians Serv.,* 120 Wis. 2d 603, 612, 357 N.W.2d 293, 298 (Ct. App. 1984).

The threshold question is whether Rene provided notice as soon as reasonably possible within the meaning of the policy and the statute. We sometimes give deference to a trial court's determination of reasonableness. *See Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). However, here the trial court's determination is based upon a summary judgment "paper record." Therefore, our review is *de novo,* and we properly consider the "reasonableness" question as one of law and subject to independent review without any deference to the trial court's ruling. *State ex rel. McMillian v. Dickey,* 132 Wis. 2d 266, 281–82 n.15, 392 N.W.2d 453, 458 (Ct. App. 1986).

Normally the mere passage of time does not constitute noncompliance with a notice provision as a matter of law. *RTE Corp. v. Maryland Casualty Co.,* 74 Wis. 2d 614, 627, 247 N.W.2d 171, 178 (1976). The circumstances of the particular case must be considered. *Id.* Compliance with a notice provision in an insurance policy may be a matter for the jury or for the court. *Id.* at 627–28, 247 N.W.2d at 178. Before a court may find noncompliance with the notice provision as a matter of law, the court must be able to say that: (1) there is no material issue of fact as to when notice was given, and when under the policy the duty to give it arose; and (2)

no jury could reasonably find the delay to have consti-
tuted only such time as was "reasonably necessary"
under the circumstances. *Id.* at 629, 247 N.W.2d at 179.

In *Kolbeck v. Rural Mutual Insurance Co.*, 70 Wis.
2d 655, 235 N.W.2d 466 (1975), the Wisconsin Supreme
Court held:

> The requirement in the policy that notice be given to
> [the] insurer as soon as practicable must receive a
> reasonable construction. It is not the duty of the
> insured to make a report *unless he has reasonable
> grounds to believe that he is a participant in an
> accident.*

*Id.* at 659, 235 N.W.2d at 469 (quoting *Vande Leest v.
Basten*, 241 Wis. 509, 512–13, 6 N.W.2d 667, 669 (1942))
(emphasis added).

Regardless of whether we agree with the trial court's
statement that Rene's duty to give Regent notice did not
arise until Rene was served with Crystal's initial sum-
mons and complaint, the question on Regent's summary
judgment motion was whether the court could say, as a
matter of law, that Rene's notice was untimely. We con-
clude that the summary judgment record does not permit
such an unequivocal statement.

Rene did not directly injure Crystal. Rather, she was
struck and injured by an oncoming vehicle driven by a
third party. According to Rene's affidavit in opposition
to Regent's summary judgment motion, his involvement
was limited to telling or signaling to Crystal that she had
her mother's permission to join them in the jeep for the
trip to the grocery store. Rene stated that he believed
that he was a witness—not a participant—in the acci-
dent.[12] We cannot say as a matter of law that a driver's

---

[12]Rene also recites in his affidavit that the police report of
the accident portrayed him as a witness to the accident. The trial

signal to a putative passenger that she has permission to enter a vehicle, coupled with an ensuing accident involving the passenger while she advances to the vehicle, constitute reasonable grounds for believing that the driver was also a participant in the accident. At a minimum, a material issue of fact exists on this question.[13]

Regent also relies on the language of *Kolbeck* that "[t]he fact of an occurrence rather than belief as to its coverage under the policy is the determinative element that gives rise to the duty to report." *Id.* Regent, however, reads this statement too selectively because an occurrence, standing alone, cannot trigger the duty to report. Rather, this statement must be read in conjunction with *Kolbeck*'s earlier holding that the insured must have reasonable grounds to believe that he or she was a participant in the accident. *Id.* Thus, the teaching of the collective *Kolbeck* language is that the occurrence must

court alluded to this report when rejecting Regent's request for summary judgment on this issue. However, Rene's affidavit is not clear as to whether he relied upon the report when making *his* own subjective assessment of his role in Crystal's accident. In our *de novo* review on appeal, we do not consider the police report as bearing on the reasonableness of his assessment.

[13]On appeal, Crystal asks that we rule, as a matter of law, that Rene did not have reasonable grounds to believe that he was a participant in the accident until he was served with the initial summons and complaint. From this, Crystal asks that we direct summary judgment to her on this coverage issue. Although the trial court's remarks support Crystal's request, we note that Crystal did not ask the court for summary judgment in her favor on this question. Although our review is *de novo,* we question whether we should (or can) order summary judgment on appeal where a party has not requested such relief before the trial court. Since we are remanding this matter to the trial court, Crystal may pursue her summary judgment request in that forum.

present reasonable grounds for a belief by the insured that he or she bears some involvement in the accident. This is a commonsense test, measured from the standpoint of a reasonable insured and the objective facts of the accident. It should not be measured from the standpoint of sophisticated (and sometimes complicated) legal rules and principles regarding insurance coverage.[14]

Regent next contends that it is "illogical" for Crystal to argue that Rene did not have reasonable grounds to believe he was a participant in the accident where she has previously argued on the prior issue that Rene was "using" the vehicle at the time of the accident. Regent argues that Crystal "cannot have it both ways."

We disagree with Regent that Crystal's arguments are illogical or inconsistent. The "use" coverage question is not governed by whether the insured had reasonable grounds to believe that he or she was a participant in the accident. Rather, as we have explained, the test is whether the "use" is one reasonably consistent with the inherent nature of the vehicle such that the risk was within the reasonable contemplation of the parties when they contracted for coverage. The question on the "use" issue thus narrowed to whether Rene was using his vehicle when he signaled permission to Crystal to enter the vehicle. The question on the "notice" coverage issue is whether the circumstances surrounding Crystal's accident constituted reasonable grounds for Rene to believe that he was a participant in the accident. These are

---

[14]We do agree with Regent, however, that the trial court's reliance on General Casualty's claims manager's doubts that Regent's policy provided coverage was wrong. As we have noted, the question is measured from the reasonableness of the insured's belief, not someone else's. This error by the trial court is not fatal, however, since our review is *de novo* and because the court gave other reasons which support its ruling.

different questions which are measured by different legal tests. One does not govern the other.

Regent raises a final argument which we conclude is premature. Regent contends that it may still avoid coverage because Crystal has failed to demonstrate that Regent was not prejudiced by Rene's delay in giving notice. Regent relies on *Gerrard Realty Corp. v. American States Insurance Co.*, 89 Wis. 2d 130, 277 N.W.2d 863 (1979), in support of this argument. However, *Gerrard* involved a case where neither the policy's nor the statute's notice deadlines were followed. *Id.* at 146, 277 N.W.2d at 872. In such a situation, the supreme court held that there is a rebuttable presumption of prejudice and the burden of proof shifts to the claimant to prove that the insurer was not prejudiced by the untimely delay. *Id.* at 146–47, 277 N.W.2d at 872.

In the instant case, we have concluded that the trial court properly denied Regent's motion for summary judgment on this issue. Thus, the question of timely notice remains to be litigated, perhaps by Crystal seeking summary judgment on the question, or perhaps by a fact finder at trial. Regardless, the question of prejudice is irrelevant until this threshold question is answered. And it will remain irrelevant if it is ultimately determined that Rene gave timely notice. Only if it is determined that Rene did not give timely notice will prejudice within the meaning of the policy and the statute come into play.

*By the Court.*—Judgment reversed; order affirmed in part; reversed in part and cause remanded with directions.